**AMERICAN ALLIANCE INSURANCE COMPANY, et al., Plaintiffs,**

v.

**JENCRAFT CORPORATION, et al., Defendants.**

No. Civ. 96–4346(WHW).

United States District Court, D. New Jersey.

Oct. 5, 1998.

Lon A. Berk, Neil S. Bromberg, Wiley, Rein & Fielding, Washington, DC, for Maryland Cas. Co.

Jay B. Spievack, John A. Morris, Kronish, Lieb, Weiner & Hellman, New York City, for Jencraft Corp.

## OPINION

WALLS, District Judge.

This matter comes before the Court upon the motion of plaintiffs Maryland Casualty Company and Northern Insurance Company ("Maryland") for summary judgment. The Court heard oral argument on July 20, 1998. For the reasons that follow, plaintiffs' motion is denied.

### *Background*

The facts of this insurance coverage dispute are relatively simple. Plaintiff Jencraft Corp. ("Jencraft") is a manufacturer, importer and distributor of various home furnishings, including lead-stabilized vinyl miniblinds. It is currently defending in several class actions—at least eight of which are at issue here [1]—throughout the country relating to the alleged deterioration of these miniblinds and their release of hazardous lead dust into the surrounding environs. The lawsuits generally sound in fraud, negligence, and breach of warranty. Most also allege violations of various state consumer-protection statutes.

Jencraft purchased primary liability and umbrella liability policies from Maryland which insure it against liability for "bodily injury," and "property damage," occurring during the policy period. The policies also provide that Maryland will defend Jencraft in any action for damages for such claims. Jencraft now seeks to have Maryland defend and indemnify it on the underlying lawsuits. Maryland refuses to do so on the grounds that those suits do not trigger coverage under the policies. Maryland takes the position that the underlying suits (1) do not seek recovery for bodily injury, and (2) do not allege damage to any property other than to the blinds themselves—coverage for which is explicitly excluded by the terms of the contracts. Maryland seeks summary judgment that Jencraft is entitled to no recovery under the policies. Its motion is denied.

### *Standard of Review*

Summary judgment is appropriate where the moving party establishes "that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant must show that if the evidence submitted were reduced to evidence admissible in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather it is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

1. Both sides agree that the actions in *Marcucilli v. Jencraft, Delaney v. Wal–Mart Stores Inc., Padillia v. Jencraft, Finley v. Wal–Mart Stores Inc., Dodys v. Jencraft, California v. Bethel Group, Rogers v. Sears Robuck & Co.,* and *Bramelwood v.* *Novo Industries* potentially implicate the policies that underlie this action. Maryland disputes that *Benefield v. Wal–Mart Stores* is also at issue. *See infra* at n. 2.

(1986). In making this determination, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Id.*

### Analysis

■ Maryland's motion fails on the issue of property damage. In support of its position, plaintiff relies on policy provisions that exclude coverage for damage to property that has not been "physically injured." *See* Watts Aff, at ¶¶ 13(b), 14(b). Maryland asserts that none of the underlying actions alleges that "Jencraft's mini-blinds [h]as caused physical injury to, or the loss of, any tangible property other than the mini-blinds themselves. The actions only seek a recall of Jencraft's mini-blinds from the market and recovery of the purchase price of Jencraft's mini-blinds." Pl.Br. at 15–16. The Court disagrees.

Though clearly not the focus of any of the underlying class actions, it is reasonable to infer the specter of a property damage claim in those suits. The complaint in *Lungren v. Bethel Group,* for example, alleges that "[e]xposure to this lead ... occurs in a number of ways: children touch the blind and then put their fingers in their mouths; adults clean or dust the blind, which spreads the lead into the air, onto hands or cleaning implements; opening windows with the blinds pulled down results in wind blowing the leaded dust into the room air or onto other room surfaces that people in the building will touch." The complaint in *Finley v. Wall–Mart Stores, Inc.,* expressly states with regard to damages that "lead dust has spread into Plaintiffs' homes and must be cleaned according to certain procedures in order to eliminate the hazard." *Finley* Compl. ¶ 111. And the complaint in *Benefield v. Wall–Mart Stores Inc.,* alleges that "[i]n order to remove all lead contamination from their respective households, each plaintiff will have to use special vacuuming equipment, at a cost of $2,000 per household." *Benefield* Compl. ¶ 6 [2]. That these

homes will require special cleanup procedures to abate the alleged health hazards indicates "physical injury" to property that could trigger coverage under the policies.

In *NL Industries, Inc. v. Commercial Union Ins. Co.,* 926 F.Supp. 446 (D.N.J.1996) this Court found that "the abatement costs associated with the removal of lead paint from the schools in Orleans Parish constitutes at least 'property damage' under the policies," *id.* 926 F.Supp. at 457, and noted that "damages 'to real property have always been measured either by the cost to restore it to its former condition or to compensate for any reduction in value.'" *Id.* (quoting *American Motorists Ins. Co. v. Levelor Lorentzen Inc.,* 1988 WL 112142 (D.N.J.1988)). In *Lac D'Amiante Du Quebec v. American Home Assurance Co.,* 613 F.Supp. 1549 (D.N.J.1985), a case involving insulation that had degraded and released asbestos fibers, the court, determining the temporal point at which damage had occurred, noted that "the asbestos ... managed to contaminate the remainder of the insulator, the curtain, walls, and carpets of the school among other things. Such contamination constitutes a physical injury to plaintiff's premises; where a defect in Defendant's product—i.e., the asbestos—creates a cognizable safety hazard, the resulting injury to property is as actionable in strict liability and negligence as personal injury resulting from defect would be." *Id.* 613 F.Supp. at 1561 (citing *Town of Hooksett School District v. W.R. Grace & Co.,* 617 F.Supp. 126, 131 (D.N.H.1984)). The allegations in *Lungren, Finley* and *Benefield* raise analogous concerns. The lead dust that has allegedly contaminated the homes and furniture of the plaintiffs creates a cognizable safety hazard and "reduce[s] the value of the property by [its] mere existence and require[s] an expenditure to be removed." *NL Industries,* 926 F.Supp. at 457. Accordingly, the Court can and does not find as a matter

2. Maryland argues that Jencraft is not explicitly named as a party in *Benefield v. Wal-mart Stores and Jon Does A–Z* and that consequently, it does not consider that lawsuit to be a component of this action. However, the complaint in *Benefield* describes John Does A–Z as, *inter alia,* "other ... persons, firms, corporation, or other entities

whose wrongful conduct caused or contributed to cause the injuries and damages to the Plaintiffs, including but not limited to entities that distributed the subject mini-blinds." Thus, it appears that Jencraft has some exposure in that action.

of law that no physical injury to property has been alleged in those cases.

 While the other suits do not explicitly raise the cost of decontamination as a measure of damages in the complaint, all arise from the same factual complex as *Lungren, Finley* and *Benefield* . Because each seeks "restitution" or "such other relief as the court deems just and proper," it is reasonable to infer that property contamination and abatement can and will eventually become an issue in those cases. *See Voorhees v. Preferred Mutual Ins.* 128 N.J. 165, 173, 607 A.2d 1255 (1992) ("If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage.") Maryland focuses on those causes of action that seek removal of the blinds from the market and recovery for economic losses, and argues that the policies' "business risk" exclusions preclude coverage. Here, those exclusions are immaterial because none speaks to the issue of the alleged contamination. *See Stonewall Ins. Co. v. Asbestos Claims Mgt. Corp.,* 73 F.3d 1178, 1208–09 (2d Cir. 1995) ("[t]he insurers also argue that claims for costs of repairing or replacing defective products are not covered "property damage" under the policies but merely non-covered economic loss. However, the claims asserted ... go beyond allegations that the asbestos materials failed to perform as intended, or that there is a risk of future harm; rather, these claims allege that the ACMs [asbestos containing materials] have already caused injury to other property, namely the structures into which the ACMs were incorporated and the contents of those structures. Such claims are for "property damage," not economic loss.")

## CONCLUSION

Accordingly, Maryland's motion for summary judgment is denied. The underlying complaints may be construed as seeking recovery for property damage. Because Maryland's claims with regard to "bodily injury" are irrelevant in light of the above discussion, they are not addressed.

SO ORDERED.

## ORDER

This matter comes before the Court upon the motion of plaintiffs Maryland Casualty Company and Northern Insurance Company ("Maryland") for summary judgment. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion, it is on October 5, 1998:

ORDERED that the motion for summary judgment is denied.