No. 2--00--0383 

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

ACTION CONSTRUCTION AND ) Appeal from the Circuit Court 

RESTORATION, INC., and JAMES ) of Winnebago County.

PICKENS, )

 )

Plaintiffs-Appellees and )

Cross-Appellants, ) 

) 

v. ) No. 97--L--0409 

) 

WEST BEND MUTUAL INSURANCE ) 

COMPANY, ) 

 ) Honorable 

Defendant-Appellant and ) Ronald L. Pirrello,

Cross-Appellee. ) Judge, Presiding.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiffs, Action Construction & Restoration, Inc., and James Pickens, sued defendant, West Bend Mutual Insurance Company, for breach of oral contract, common-law fraud, equitable estoppel, and promissory estoppel. The breach of oral contract and common-law fraud counts were tried before a jury, and the jury found in Action’s favor on both counts. 
On appeal, West Bend argues that (1) the jury’s verdict on the contract and fraud counts was not supported by the evidence, (2) the trial court erred in denying West Bend’s motion for a new trial based on newly discovered evidence, and (3) the trial court erred in denying West Bend’s request for remittitur.  In its cross-appeal, Action argues that the trial court erred in (1) denying Action’s request for punitive damages, attorney fees, and statutory interest and (2) reducing the jury’s verdict from $479,732.39 to $450,615.
 Because we conclude that the jury’s verdict on the oral contract count is legally inconsistent with its verdict on the common-law fraud count, we reverse and remand for a new trial.

BACKGROUND

On March 29, 1997, a fire destroyed most of the factory owned by Burmac Metal Finishing Co.  Burmac’s factory was insured by West Bend.  An adjuster for West Bend hired Action to secure the building and perform some preliminary board-up work.  According to Action’s president, James Pickens, the West Bend adjuster then directly hired Action to perform whatever work was necessary to "get Burmac back in operation."  In the end, Action performed restoration work totaling more than $450,000.

West Bend vehemently denies directly hiring Action for anything other than the preliminary board-up work.  According to West Bend, Action was hired by Burmac, which expected to pay Action with the proceeds of its West Bend insurance coverage. As it turns out, West Bend denied Burmac’s fire loss claim and refused to pay Action directly for any of the work performed. 

Action then sued West Bend for (1) breach of oral contract, (2) common-law fraud, (3) equitable estoppel, and (4) promissory estoppel.  The jury found in Action’s favor on the contract and fraud counts and entered a $479,732.39 verdict.  After entering judgment on the jury’s verdict (which the trial court reduced to $450,615), the trial court also found in Action’s favor on both estoppel counts and entered an $18,897.28 judgment.  This timely appeal followed. 

ANALYSIS

To prove breach of contract, Action had to prove (1) the existence of a valid and enforceable contract, (2) substantial performance by Action, (3) a breach by West Bend, and (4) resulting damages.  See 
Klem v. Mann
, 279 Ill. App. 3d 735, 740-41 (1996).  For an oral contract to be valid and enforceable, its terms must be definite and consistent.  
Trittipo v. O’Brien
, 204 Ill. App. 3d 662, 672 (1990).  When it appears that the language used or the terms proposed are understood differently by the parties, there is no meeting of the minds and no contract exists.  
Trittipo
, 204 Ill. App. 3d at 672. 

Here, the jury was instructed not only on breach of contract but also on West Bend’s affirmative defenses.  One of West Bend’s affirmative defenses was that "no oral contract was created because as a condition precedent to an enforceable contract Burmac had to have insurance coverage."  The jury not only returned a verdict in plaintiff’s favor but also answered the following special interrogatory in the negative: 

"Did Plaintiff know or should it have known that Defendant’s obligation to pay Plaintiff for restoration and construction services was contingent upon an obligation on the part of Defendant to pay insurance benefits under its policy with Burmac?" 

Thus, by finding in Action’s favor on the breach of contract claim, the jury necessarily found that Action and West Bend had a meeting of the minds and that West Bend’s obligation to pay was in no way contingent upon the availability of Burmac’s insurance coverage. 

On the common-law fraud count, the jury was instructed that Action had the burden of proving, among other things, that "the defendant, through its agent, made "[a] false statement of fact and knowingly concealed or withheld from the plaintiff material facts with the intent to deceive the plaintiff and induce the plaintiff to perform certain restoration and construction work."  The jury was further instructed:

"Plaintiff *** claims that the defendant, through its agent, knowingly concealed or withheld from [it] the following facts:

(a) That defendant’s willingness to pay plaintiff for the restoration and construction work was contingent upon the terms of the defendant’s insurance agreement with Burmac; and

(b) That there was an insurance coverage problem that might limit or preclude a claim for insurance benefits by Burmac."

The jury not only returned a verdict in Action’s favor on the common-law fraud count but also answered the following special interrogatory in the affirmative: "Did any employees or agents of defendant intentionally conceal any material facts?" Thus, by finding in Action’s favor on the common-law fraud count, the jury necessarily found that West Bend’s willingness to pay was contingent upon valid insurance coverage for Burmac and that West Bend intentionally withheld this fact when it hired Action to perform the restoration and construction work.

The inconsistency is now apparent: The jury found both that (1) Action and West Bend had a meeting of the minds and that West Bend’s obligation to pay was in no way contingent upon the availability of Burmac’s insurance coverage (breach of contract); and (2) West Bend’s willingness to pay was contingent upon valid insurance coverage for Burmac and that West Bend intentionally withheld this fact when it hired Action to perform the restoration and construction work (common-law fraud). These two findings are legally inconsistent. The two parties could not have had a meeting of the minds if West Bend fraudulently concealed a material fact. Conversely, if the two parties truly reached a meeting of the minds and payment was never contingent upon coverage, West Bend’s concealment of the coverage dispute could not be fraudulent.

The difficulty is compounded by the fact that the evidence alternatively supports both verdicts.  There is certainly evidence from which the jury could have concluded that West Bend hired Action directly and that West Bend’s promise to pay was never contingent upon coverage (breach of contract).  Likewise, there is evidence from which the jury could have concluded that West Bend led Action to believe that payment was not contingent upon coverage, all the while knowing that it would pay Action only if coverage was available (common-law fraud). Unfortunately, neither law nor logic permits the evidence to support both verdicts simultaneously
.

This case is remarkably similar to 
Wottowa Insurance Agency, Inc. v. Bock
, 104 Ill. 2d 311 (1984). In 
Wottowa
, the plaintiff sued the defendants for both breach of guaranty and fraud. In the breach of guaranty count, the plaintiff alleged that the defendants personally guaranteed certain corporate obligations and then refused to honor that personal guarantee when the corporation folded. In the fraud count, the plaintiffs alleged that the defendants signed the personal guaranty with no intention of honoring it, thereby inducing the plaintiff to extend credit to the corporation that it otherwise would not have extended. The jury returned a verdict in the defendants’ favor on the breach of guaranty count and in the plaintiff’s favor on the fraud count. 
Wottowa
, 104 Ill. 2d at 312-13.

The supreme court faced three issues: (1) whether the guaranty in question was a personal or corporate obligation; (2) whether the verdict in the defendants’ favor on the breach of guaranty count could stand; and (3) whether the trial court should have directed a verdict or entered a judgment notwithstanding the verdict in the defendants’ favor on the fraud count.  Before reaching these issues, however, the supreme court observed that, by ruling in the defendants’ favor on the breach of guaranty count, the jury necessarily found that the guaranty in question was a corporate, rather than a personal, obligation.  
Wottowa
, 104 Ill. 2d at 316. The court then continued:

"It is logical to conclude, therefore, that once the jury determined by its verdict that the guaranty agreement was not a personal obligation, but rather a corporate obligation, the allegation of fraud under count II had to fail.  However, under [the fraud count], the jury found that the defendants 'fraudulently induced the plaintiff into further extensions of credits by executing the attached Guarantee Agreement without any intention of personally guaranteeing the obligations' of the two corporations. Such findings are irreconcilably inconsistent."  
Wottowa
, 104 Ill. 2d at 316.

Having 
sua sponte
 found the jury’s verdict legally inconsistent, the supreme court set aside the jury verdict and ordered a new trial. 
Wottowa
, 104 Ill. 2d at 316.

Like the supreme court in 
Wottowa
, we are faced in this case with a jury verdict that is legally inconsistent.  We therefore have no choice but to set aside that verdict and order a new trial.  See 
Wottowa
, 104 Ill. 2d at 316. 

Accordingly, the judgment of the circuit court of Winnebago County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

RAPP and GROMETER, JJ., concur.