FOURTH DIVISION

November 7, 2002

No. 1-01-2807

MICHAEL ROBERT POPE, a Minor,

by Cynthia Lea Pope, His Mother and Next Friend, )   Appeal from

) the Circuit Court

Plaintiff-Appellant, ) of Cook County.

)

v. ) No. 00 CH 03864

)

ECONOMY FIRE & CASUALTY COMPANY, )     Honorable

) Richard J. Billik,

Defendant-Appellee. ) Judge Presiding.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff Michael Robert Pope, through his mother and next friend, Cynthia Lea Pope, appeals from a declaratory judgment in favor of defendant Economy Fire & Casualty Company (Economy).  On cross-motions for summary judgment, the trial court held that Economy did not commit an anticipatory breach of its duty to defend its insured in connection with a lawsuit commenced by plaintiff for injuries allegedly sustained as the result of his ingestion of lead-based paint or lead dust while renting an apartment from the insured.  

On appeal, plaintiff contends that Economy's refusal of coverage before its insured was served with a lawsuit was an anticipatory breach of the insurance contract.  As a result, plaintiff argues that the insured was relieved of her obligation to tender notice of the underlying lawsuit and that Economy is estopped from asserting any defenses under the policy.   Additionally, plaintiff contends that the lead paint exclusion in the policy does not bar coverage for his claims of negligence arising from the presence of lead dust and violations of the Chicago Municipal Code.  We affirm the judgment of the circuit court.

BACKGROUND

The following undisputed facts were adduced from the parties' cross-motions for summary judgment.  In November 1989, Nancy Basta purchased a 15-unit apartment complex located at 3316-24 West Sunnyside Avenue in Chicago.  She acquired a business owner's liability policy for the property which was issued by Hanover Insurance Company.  That policy was in effect from November 22, 1989, until March 8, 1990.  Thereafter, she was insured by Economy under a multi-peril liability policy from March 8, 1990, through March 8, 1994.  From January 1989 until December 1994, plaintiff and his family rented the first-floor apartment from Basta.

In July 1993, Basta received a letter from the City of Chicago department of health.  The letter referenced the Sunnyside property and stated that the City's "inspection of the above listed premises has found the presence of lead bearing paint in violation of chapter 7.4 of the Municipal Code of Chicago."  The letter further ordered Basta to immediately abate the lead paint contamination and instructed her to attend a hearing at the department of health.  Thereafter, Basta attended the hearing with her attorney and acknowledges that she was aware of plaintiff's allegation of lead paint poisoning at that time.  She had the lead paint removed from the premises as required by the City within 30 days.  Basta never gave Economy or Hanover notice of this occurrence.
(footnote: 1)    

 Almost two years later, on March 1, 1995, plaintiff's attorney sent Basta an attorney's lien letter informing her of plaintiff's claim for injuries from "lead poisoning contracted on the premises."  The letter suggested that Basta notify all present and past insurance carriers of the claim.  The very next day, on March 2, 1995, plaintiff filed a complaint against Basta and others, alleging that he was poisoned by exposure to lead-based paint, dust, and residue at the Sunnyside premises.  The complaint alleged that the property contained a dangerously high level of lead in paint found on the woodwork and other surfaces, that the presence of lead paint was extremely hazardous to plaintiff's health and well-being, and that plaintiff ingested lead, by either eating it or by breathing or ingesting the lead-contaminated dust created by crumbling, deteriorating or oxidizing lead-based paint.  The complaint further stated that Basta and others had a duty to exercise reasonable care to remedy the danger caused by the presence of lead-based paint in the property, and that the painted surfaces were in poor condition and disrepair, with "deteriorated paint and paint dust."  Additionally, plaintiff alleged negligence arising from violations of the Chicago Municipal Code.  

Thereafter, on March 14, 1995, Basta forwarded plaintiff's notice of lien letter to Economy.  At that time, she had not yet been served with a complaint.  On April 12, 1995, Economy responded in writing to Basta.  Based upon the attorney's lien letter and the policy, Economy notified her that it would be "unable to indemnify [her] nor provide a defense for [her] in this matter" because the injury to plaintiff was due to the "alleged exposure to lead paint."  Economy advised Basta that according to an exclusion in the relevant policy, coverage did not apply to "bodily injury or property damage arising out of actual, threatened or alleged exposure to asbestos, lead paint, fiberglass or radon gas."  The letter further provided that Economy "will, of course, be available to you to discuss the position [it has] taken."  A copy of the letter was sent to Basta's insurance agent and to plaintiff's counsel.  Neither Basta, her agent, nor plaintiff's counsel ever responded to the denial letter.      

Plaintiff served Basta with the complaint on May 8, 1995.  Basta never gave Economy  notice of the lawsuit.  However, she did notify Hanover of the suit.  Unlike the Economy policy, the Hanover policy did not include a lead paint exclusion.  After receiving notice of the underlying suit, Hanover investigated the claims against Basta and initially denied coverage for the underlying suit.  Thereafter, Hanover sought a declaratory judgment regarding its obligations and defended Basta under a reservation of rights.  

Plaintiff's lawsuit was eventually dismissed in accordance with a settlement agreement between Basta, plaintiff, and Hanover.  Under the terms of the settlement, Hanover agreed to pay plaintiff a lump sum of $60,000.  Additionally, Basta agreed to assign to plaintiff all of her claims against Economy.  Plaintiff was to be paid $2 million to be collected from Economy solely through the assignment.  Neither Basta nor Hanover ever notified Economy of the settlement agreement.  

In March 2000, plaintiff filed a complaint as the assignee of the rights of the insured seeking a declaration that Economy breached its duty to defend Basta in the underlying action.  On cross-motions for summary judgment, plaintiff argued that Economy's denial of its duty to defend before Basta received notice of the lawsuit was an anticipatory breach of the insurance contract.  The trial court found that there was no breach of Economy's duty to defend where the factual allegations in the underlying suit, when compared to the lead paint exclusion in the policy, did not give rise to a potential for coverage.  Plaintiff filed a timely appeal.  We granted leave to the Complex Insurance Claims Litigation Association to file an 
amicus
 
curiae
 brief in support of Economy's position.  

ANALYSIS  

Plaintiff contends that the trial court erred in granting Economy's motion for summary judgment and that he was entitled to summary judgment as a matter of law.  A motion for summary judgment is properly granted when, viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits establish that no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2000); 
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342, 349, 701 N.E.2d 493, 496 (1998).  The standard of review in cases involving summary judgment is 
de
 
novo
.  
Ragan
, 183 Ill. 2d at 349, 701 N.E.2d at 496.  

Plaintiff initially argues that Economy's denial of coverage to Basta before she was served with the complaint in the underlying lawsuit was an anticipatory breach of Economy's duty to defend under the insurance contract.  The concept of anticipatory breach of a contractual duty to defend under a liability insurance policy has never specifically been addressed in Illinois nor have we found any other jurisdictions that have considered the issue in this context.  Thus, we find it necessary to first consider the application of the doctrine in light of the nature of the contract before us.  Generally, the doctrine has been applied in Illinois primarily to bilateral executory contracts for the sale of goods and services or real estate where there is a definite duty to perform some act in the future.  See, 
e.g.
, 
Wilmette Partners v. Hamel
, 230 Ill. App. 3d 248, 594 N.E.2d 1177 (1992) (anticipatory breach of a duty to perform on an excavation contract); 
First National Bank & Trust Company of Evanston v. First National Bank of Skokie
, 178 Ill. App. 3d 180, 533 N.E.2d 8 (1988) (anticipatory breach of a duty to perform on a real estate sales contract); 
Student Transit Corp. v. Board of Education of the City of Chicago
, 76 Ill. App. 3d 366, 395 N.E.2d 69 (1979) (anticipatory breach of a duty to perform on a contract for transportation services).  

Here, among the contractual duties Economy owed its insured under the present contract was a duty to defend any suit seeking damages for covered bodily injury.  However, unlike contracts where there is a definite duty to perform some act in the future, the duty presented here is contingent upon the facts alleged in an underlying complaint if and when a complaint is filed by a third party to the insurance contract.  When the underlying complaint alleges facts that are within or potentially within the scope of the policy coverage, the insurer has a duty to either defend the insured under a reservation of rights or seek a declaratory judgment of its rights and responsibilities or risk being found in breach of its duty to defend.  
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 153, 708 N.E.2d 1122, 1135 (1999).  Thus, the nature of Economy's duty to defend under its contract with Basta would be contingent upon receipt of a potentially covered complaint from a third party.

        With an understanding of the nature of the contract before us, we now turn to our consideration of whether plaintiff can maintain an action for anticipatory breach.  To do so, we find that we must consider the following issues: (1) whether there was a repudiation of the contract; (2) whether the conditions of the contract could be fulfilled had the contract not been allegedly repudiated; and (3) whether damages resulted from the alleged repudiation.

An anticipatory repudiation has been defined as a manifestation by one party to a contract of an intent not to perform its contractual duty when the time fixed in the contract has arrived.  
In re Marriage of Olsen
, 124 Ill. 2d 19, 24, 528 N.E.2d 684, 686 (1988); 
Podolsky & Associates L.P. v. Discipio
, 297 Ill. App. 3d 1014, 1023, 697 N.E.2d 840, 846 (1998); See also 
Yale Development Co. v. Aurora Pizza Hut, Inc.
, 95 Ill. App. 3d 523, 526, 420 N.E.2d 823, 825 (1981).  The party's manifestation must clearly and unequivocally be that it will not render the promised performance when it becomes due.  
In re Marriage of Olsen
, 124 Ill. 2d at 24, 528 N.E.2d at 686.   

Prior to the triggering of Economy's duty to defend, and before Basta had been served with plaintiff's complaint, Basta forwarded plaintiff's attorney's lien letter to Economy.  In response, Economy denied coverage in its April 12 letter and specifically denied any duty to defend Basta based upon the lead paint exclusion in the policy.  At that time, the only information Economy had before it was that the claim involved "lead poisoning" and that plaintiff had a lawyer.  Thus, based upon the modicum of information before it, knowing that it was likely that a lawsuit would ensue, and before it had an opportunity to determine whether there was a complaint alleging facts potentially within the scope of coverage, it denied its duty to defend under its lead paint exclusion.  Thus, by its April 12 letter, Economy could be said to have repudiated the contract by prematurely and unequivocally stating that it would not defend its insured even against a potentially covered claim in the event a lawsuit was filed.     

Nevertheless, to recover plaintiff must also prove that the conditions in the contract could have been fulfilled had the contract not been repudiated.  On this element, we find the case of 
Yale Development Co. v. Aurora Pizza Hut, Inc.
, 95 Ill. App. 3d 523, 420 N.E.2d 823 (1981) to be instructive.  There, the parties executed a real estate sales contract in which the defendant agreed to pay $90,000 in exchange for certain property in Du Page County.  The sale was made contingent upon plaintiff being able to obtain a zoning change and liquor license to operate a restaurant.  After the zoning board denied plaintiff's petition for rezoning, he filed a complaint seeking a declaratory judgment that the existing zoning was void and that the intended use of the premises be permitted.  Before the court issued its decision, defendant sent plaintiff a letter purporting to terminate the contract due to the inability to obtain the proper zoning of the property.  Subsequently, the court denied the rezoning of the property.  Plaintiff then filed an action alleging that defendant had repudiated the contract prior to the time performance was due.  
Yale Development Co.
, 95 Ill. App. 3d at 524-25, 420 N.E.2d at 824-25.

The appellate court held that even assuming the defendant's letter was regarded as an anticipatory repudiation of the contract, the plaintiff could not maintain an action on the contract due to his subsequent inability to fulfill the condition of obtaining the rezoning.  
Yale Development Co.
, 95 Ill. App. 3d at 526, 420 N.E.2d at 825.  While the court recognized that it was not necessary for the plaintiff to actually tender performance because the non-repudiating party would be excused from further performance on the contract, the court held that the plaintiff must still show an ability to perform the conditions of the contract had the repudiation not occurred.  
Yale Development Co.
, 95 Ill. App. 3d at 526-27, 420 N.E.2d at 826.  The court further reasoned that the plaintiff should not be allowed to put itself in a better position by suing immediately on an anticipatory breach instead of waiting to maintain an action for breach at the time when the defendant's performance was due.  
Yale Development Co.
, 95 Ill. App. 3d at 526-27, 420 N.E.2d at 826.

We find this analysis to be applicable to the present case.   Just as the seller's duty was made contingent upon the buyer being able to obtain a zoning change and liquor license to operate a restaurant, Economy's duty to defend was made contingent upon there being a potential for coverage.  While in 
Yale Development Co.
, the buyer, as the non-repudiating party, was relieved of its obligation to actually tender its performance on the contract, it was still obligated to show its ability to fulfill the contingency of obtaining the rezoning had the contract not been repudiated.  Similarly, here, 
while Basta may have been relieved of her obligation to actually tender performance on the contract, 
i.e.,
 provide notice of the underlying lawsuit, plaintiff must still prove that the contingency in the insurance contract, the potential for coverage, could have been fulfilled had the contract not been repudiated.  

That inquiry necessarily involves comparing the allegations of the complaint to the language of the policy to determine whether there was indeed a potential for coverage.  
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 532, 655 N.E.2d 842, 847 (1995).   The policy excludes coverage for "'bodily injury' or 'property damage' arising out of actual, threatened or alleged exposure to asbestos, lead paint, fiberglass or radon gas."  When comparing the allegations of the complaint to the language of the policy, it is evident that the allegations do not give rise to a potential for coverage.  The complaint is replete with references to lead paint and states that plaintiff ingested lead by either eating it or by breathing or ingesting the lead-contaminated dust created by "crumbling, deteriorating or oxidizing lead-based paint."  

We reject plaintiff's assertion that the complaint alleges additional facts that potentially fall within the coverage provided by Economy.  Plaintiff's argument raises an issue of first impression in Illinois: whether the lead paint exclusion precludes coverage for plaintiff's exposure to lead dust where the exclusionary provision contains no express reference to lead dust.  When an insurer relies upon an exclusionary clause in an insurance policy to deny coverage, the applicability of the clause must be clear and without doubt because any doubts as to coverage will be resolved in favor of the insured.  
Yamada Corp. v. Yasuda Fire & Marine Insurance Co.
, 305 Ill. App. 3d 362, 371, 712 N.E.2d 926, 933 (1999).  However, courts should not torture the language of a policy to find coverage where it is clear that none exists.  
Cohen Furniture Co. v. St. Paul Insurance Co.
, 214 Ill. App. 3d 408, 411, 573 N.E.2d 851, 852 (1991).  

As stated previously, the policy's lead paint exclusion barred coverage for "'bodily injury' or 'property damage' arising out of the actual, threatened or alleged exposure to asbestos, lead paint, fiberglass or radon gas."  There is no requirement in Illinois that a policy exclusion be drafted to include limiting rather than general terms.  That the exclusion contains no express reference to lead dust does not necessarily mean that lead dust falls outside the purview of the exclusion.  Rather, the relevant inquiry must be whether the language of the lead paint exclusion nevertheless unambiguously applies to lead dust in the context of this specific set of facts.   When the exclusionary language is viewed in light of the complaint, it is evident that lead dust unambiguously falls within the lead paint exclusion in this case.  The complaint alleges injuries arising from the ingestion or inhalation of lead dust created by "crumbling, deteriorating or oxidizing lead-based paint."  The complaint does not refer to lead dust created by any other source.  While we recognize the possibility that other lead dust hazards might create a potential for coverage (see, 
e.g.
, 
American Alliance Insurance Co. v. Jencraft Corp
., 21 F. Supp. 2d 485 (D.N.J. 1998) (suit alleged that the insured's lead-stabilized mini-blinds were releasing hazardous lead dust)), that is not the case here.  We also note that neither party presented any scientific evidence to support its contentions.  Here, the reasonable interpretation, taken in the context of the allegations of this complaint, is that the exclusion for bodily injury arising from lead-based paint precludes coverage for injuries arising from lead paint dust.  

Plaintiff additionally directs our attention to the allegations of negligence arising out of violations of the Chicago Municipal Code.  Plaintiff alleges that Basta failed to maintain the property in fit and habitable condition and failed to maintain the floors, interior walls, and ceilings free of peeling, chipped, or loose paint and plaster.   However, these allegations are premised upon exposure to lead-based paint and lead paint dust, which resulted in lead poisoning.  As stated in the complaint, "[t]he condition of the Property during the time of Minor Plaintiff's residence exposed Minor Plaintiff to lead-based paint, dust and residue."  The allegations are not based on any other condition of habitation and are therefore encompassed by the exclusion in the policy. 

Accordingly, we find the allegations are not sufficient as a matter of law to have created the potential for coverage.  Consequently, because plaintiff cannot establish that the condition of the contract could have been fulfilled had the contract not been repudiated, he cannot maintain an action for anticipatory breach. 

Moreover, as in any breach of contract action, the plaintiff must prove that damages resulted from the repudiation of the contract.  
Action Construction and Restoration, Inc. v. West Bend Mutual Insurance Co.
, 322 Ill. App. 3d 181, 182, 748 N.E.2d 824, 826 (2001).   The proper measure of damages is the amount of money that will place the injured party in as satisfactory a position as he or she would have been in had the contract been performed.  
Equity Insurance Managers of Illinois, LLC v. McNichols
, 324 Ill. App. 3d 830, 837, 755 N.E.2d 75, 80 (2001); 
Student Transit Corp.
, 76 Ill. App. 3d at 369, 395 N.E.2d at 71 (1979).  The injured party should not be placed in a better position or provided with a windfall recovery.  
Wilmette Partners
, 230 Ill. App. 3d at 261, 594 N.E.2d at 1187.  Thus, as stated in 
Yale Development Co.
, 95 Ill. App. 3d at 526-27, 420 N.E.2d at 826, the remedies for an anticipatory breach cannot be greater than the remedies that would be available to the nonbreaching party at the time the breaching party's performance was due.  To allow plaintiff to recover damages here would be to place him in a better position than he would have been at the time when Economy's performance on the contract was due.  Where Economy's duty was never triggered, it could not have breached its duty to defend Basta.       

Plaintiff argues that Basta was damaged by the alleged anticipatory breach when she detrimentally changed her position in reliance on Economy's repudiation by being forced to defend herself and by incurring attorney fees and by paying "out of her own pocket" in settlement. While plaintiff is correct that where there has been an anticipatory breach, the non-repudiating party may detrimentally change its position in reliance on the repudiation (
Builders Concrete Co. of Morton v. Fred Faubel & Sons, Inc.
, 58 Ill. App. 3d 100, 373 N.E.2d 863 (1978)), plaintiff's contentions have no merit in light of the facts presented.  The undisputed record reveals that Basta had been aware since 1993, well before the denial of coverage letter on April 12, 1995, that plaintiff's claims of lead poisoning arose as a result of his exposure to lead-based paint on her premises.  Moreover, she did not defend herself.  Rather, she tendered the notice of suit to Hanover, whose policy lacked a lead paint exclusion.  Hanover provided a defense on her behalf in the underlying lawsuit and settled with plaintiff for $60,000.  Accordingly, because plaintiff cannot establish a right to damages, he cannot maintain an action for anticipatory breach of the insurance contract.

While plaintiff relies on 
Bituminous Casualty Corp. v. Commercial Union Insurance Co.
, 273 Ill. App. 3d 923, 652 N.E.2d 1192 (1995)
, to support its theory of anticipatory breach of the insurance contract, we find the case distinguishable both on the facts and the law.  Initially, in 
Bituminous
, the nature of the contract was different.  There, the insurer was an excess carrier and among the issues before the court was whether it committed an anticipatory breach of its duty to indemnify its insureds.  Unlike the duty to defend, the duty to indemnify is triggered when (1) the insured becomes legally obligated to pay damages in the underlying action and (2) the action gives rise to a claim under the policy.  
Bituminous
, 273 Ill. App. 3d at 927, 652 N.E.2d at 1195.  In 
Bituminous
, the insureds became legally obligated to pay damages in a wrongful death action.  They argued that the excess carrier breached its contract by aniticipatory repudiation when it wrote two letters stating that it would not reimburse the insureds until the primary insurer paid out its entire general liability policy and the self-insured retention was exhausted.  
Bituminous
, 273 Ill. App. 3d at 927, 652 N.E.2d at 1195.  The parties agreed that the self-insured retention had indeed been exhausted and the court further found that under the excess policy, there was no obligation that the insured had to seek payment from any other insurer before the coverage under the excess policy was triggered.  Once the insureds paid any amount for an employer liability claim and defense costs, the excess insurer was obligated to reimburse them.  
Bituminous
, 273 Ill. App. 3d at 929, 652 N.E.2d at 1196-97.  Thus, in 
Bituminous
, the excess insurer's duty to indemnify had already been triggered at the time the contract was repudiated.  In the present case, the duty to defend never arose.

Since plaintiff cannot maintain an action for anticipatory breach, w
e reject his argument that Economy is estopped from raising policy defenses
.  Plaintiff is correct that if the insurer fails to defend under a reservation of rights or seek a declaratory judgment, the insurer may be estopped from raising policy defenses.  
Ehlco
, 186 Ill. 2d at 150-51, 708 N.E.2d at 1134-35.  However, estoppel will apply only if the insurer is later found to have wrongfully denied coverage under the policy. 
 Ehlco
, 186 Ill. 2d at 150-51, 708 N.E.2d at 1135.  Therefore, if the insurer had no duty to defend or its duty to defend was not properly triggered, estoppel cannot be applied against the insurer.  
Ehlco
, 186 Ill. 2d at 151, 708 N.E.2d at 1135.  Such is the case where the insurer was given no opportunity to defend or participate in the underlying suit, where there was no insurance policy in existence, and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage. 
 Ehlco
, 186 Ill. 2d at 151, 708 N.E.2d at 1135.  Here, we recognize that by not defending under a reservation of rights or filing a declaratory judgment action Economy risked being found in breach of its duty to defend.  However, as explained above, where Economy's duty was never triggered, it cannot be estopped from raising coverage defenses, including the lead paint exclusion.  Accordingly, because Economy was entitled to judgment as a matter of law, the circuit court properly ruled on the cross-motions for summary judgment.  

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.  

HARTMAN and KARNEZIS, J.J., concur.

FOOTNOTES
1: While the issue of late notice of occurrence was raised by Economy to support its motion for summary judgment, the issue was not raised by Economy on appeal.  Accordingly, this issue is waived.  188 Ill. 2d Rs. 341(e)(7), (f).