**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190725-U

Order filed November 25, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| HOLLY J. JOHNSON, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | Appeal No. 3-19-0725 |
| | ) | Circuit No. 19-SC-1729 |
| | ) | |
| LUIS C. VASQUEZ JR., | ) | Honorable |
| | ) | Richard A. Zimmer |
| Defendant-Appellee. | ) | Judge, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Carter and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Trial court did not err when it found no valid agreement existed requiring defendant to pay plaintiff back for money she contributed to the house he owned and they previously shared.

¶ 2    Plaintiff Holly J. Johnson sued defendant Luis C. Vasquez Jr. in small claims court alleging that he owed her $5000 for contributions she made to the house he owned and that he refused to pay her. The trial court entered judgment for Vasquez, finding Johnson failed to prove a valid agreement existed. We affirm.

FACTS

¶ 4        Plaintiff Holly J. Johnson brought this small claims action against defendant Luis C. Vasquez Jr. to recover $5000 she alleged he failed to pay her back based on their oral agreement. According to Johnson, she contributed funds for renovations for the house in which they both lived and Vasquez owned. A trial took place on her complaint and both parties proceeded *pro se*.

¶ 5        Shawna Colohan testified. She lived as a roommate with Johnson and Vasquez on two occasions when they lived in an apartment and in a trailer. She also stayed with them for two weeks at Vasquez's house during her vacation. They were renovating the house at the time. She had a discussion with Vasquez about Johnson's workers' compensation settlement, and he planned to have Johnson rent an apartment for them for the winter because the house was not completed.

¶ 6        Johnson testified. Vasquez's father bought the house for him. It was her understanding that because she did not "want any part of that house," any money she contributed would be repaid. She and Vasquez agreed that he would pay back any money she contributed to the house. He promised to pay her back in multiple text messages. The text messages were admitted into evidence. She acknowledged that the texts expressed both that Vasquez did and did not owe her any money. He kept saying he was a man of his word and would pay her back but then said he did not owe her any money. Johnson sent Vasquez a demand letter for the $5000 her owed her but he refused to pay. In response to the court's inquiry as to why the amount she sought was $5000, Johnson said that Vasquez was to keep track of funds she expended for his house. She paid for various workers who came to the house, such as Cliff, the furnace repairman. She paid for the washer, dryer and futon.

¶ 7        Vasquez testified. When he and Johnson moved into his current house, he told her that she could either rent an apartment or contribute to the house in lieu of rent. He did agree to pay Johnson

back, but in his opinion, he did not owe Johnson anything. If he did owe Johnson, the amount was nowhere near $5000 and any amount would be offset for rent. When Colohan lived with them, she also lived rent-free. Both he and Johnson were contributing money to the house, with it all balancing out in the end. On cross-examination, he acknowledged he was off work for four to six months. During that time, Johnson paid the bills, as did he with $8500 he received from the sale of his motorcycle.

¶ 8    The trial court questioned Vasquez about the texts indicating he would pay her back. He explained the texts were referencing general day-to-day expenses, such as groceries, to which Johnson was contributing.

¶ 9    Johnson recalled Colohan. She and Johnson were former coworkers. She paid rent when she lived with Johnson and Vasquez.

¶ 10   The trial court concluded that Johnson failed to carry her burden to establish a valid contract existed and entered judgment against her and in favor of Vasquez. She timely appealed.

¶ 11                                  ANALYSIS

¶ 12   On appeal, Johnson challenges the trial court's judgment against her and in Vasquez's favor. She argues that she established the parties had an agreement, Vasquez breached it, and she was damaged by the breach.

¶ 13   As an initial note, Johnson filed the only brief in this case. However, because the record is simple and we can determine the errors without Vasquez's brief, we will determine the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 14   To sustain a breach of contract claim, a plaintiff must demonstrate (1) a valid and enforceable contract exists, (2) the plaintiff performed his contractual obligations, (3) the

3

defendant breached the contract, and (4) and the breach damaged the plaintiff. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27. To be enforceable, the terms and provisions of a contract must allow the court to determine on what the parties agreed. *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1091 (2003). There is no meeting of the minds when acceptance of the contract is not objectively demonstrated. *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 43. The terms of an oral contract must be definite and consistent for the contract to be valid and enforceable. *Action Construction & Restoration, Inc. v. West Bend Mutual Insurance Co.*, 322 Ill. App. 3d 181, 182 (2001). There is no meeting of the minds and thus no valid contract when the parties understand the terms differently. *Id.* We will not reverse a trial court's factual finding whether a contract existed unless it was against the manifest weight of the evidence. *Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 836 (2005).

¶ 15    The trial court found no valid contract existed because Johnson failed to establish a meeting of the minds. We agree. Johnson did not present any evidence to show that she and Vasquez reached an agreement about whether, what and how much he would pay her back for her contributions to the house. The texts during the timeframe the couple was still together reflected that they shared money back and forth. According to Vasquez, the texts reflected his agreement to pay her back for daily expenses, such as groceries. There were no text messages indicating that he agreed to pay for other contributions to the house, such as payments to workers. There were texts from Vasquez to Johnson in which he denied that he owed her any money. He disputed he owed any money, but if he did, estimated its amount would not be anywhere near $5000. Johnson testified that Vasquez was to keep track of her loans to him for the house. She failed to submit any documentation reflecting the amounts she spent, on what she spent the money, and for what expenditures Vasquez was to reimburse her.

4

¶ 16    The court reviewed the text messages and found that while there were texts about money owed to Johnson, the texts were not clear about what money was owed or the amount. The court found Vasquez to be the more credible witness and credited his testimony that the only agreement reached was they were a couple spending money together. The court further found there was no concrete point that a contract existed about a $5000 loan. The texts do not reflected Vasquez agreed to pay Johnson $5000. We find the trial court did not err when it found a valid contract did not exist and entered judgment against Johnson and for Vasquez.

¶ 17                                              CONCLUSION

¶ 18    For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

¶ 19    Affirmed.