2019 IL App (1st) 190092-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
December 17, 2019

No. 1-19-0092

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal from the |
| ENERGYM GYMNASTICS, INC., ANDREW A. | ) | Circuit Court of |
| MORREALE, JOSEPH R. HANNON, JANE DOE and | ) | Cook County |
| JOHN DOE, individually and on behalf of their minor | ) | |
| child Joy Doe, JEFFREY DOE, individually and on behalf | ) | No. 17-CH-1948 |
| of his minor child Jennifer Doe, JANE WHITE and JOHN | ) | |
| WHITE, individually and on behalf of their minor child | ) | The Honorable |
| Joy White, and JANE SMITH and JOHN SMITH, | ) | Moshe Jacobius, |
| individually and on behalf of their minor child Joy Smith, | ) | Judge Presiding. |
| | ) | |
| Defendants and Counterplaintiffs | ) | |
| | ) | |
| (Energym Gymnastics, Inc., and Andrew A. Morreale, | ) | |
| Defendants and Counterplaintiffs-Appellants.) | ) | |
| | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Trial court properly granted declaratory judgment in favor of insurer that it owed no duty to defend insureds against four underlying complaints alleging gymnastics instructor committed acts of sexual assault against four minors. The fact that insurer sent letter

disclaiming coverage prior to reviewing any underlying complaint was not a breach of duty estopping insurer from asserting policy defenses to coverage, where no complaint potentially within coverage was ultimately filed.

¶ 2    The appellants, Energym Gymnastics, Inc. (Energym), and Andrew A. Morreale, appeal from the trial court's granting of the declaratory judgment sought by the appellee, Markel Insurance Company (Markel), that Markel owed no duty to defend or indemnify Energym or Morreale under a policy of commercial general liability insurance for the claims against them in four underlying lawsuits alleging that Joseph R. Hannon, a gymnastics instructor working for Energym, had committed acts of sexual assault against four minors. Energym and Morreale also appeal from the trial court's dismissal of their counterclaims and striking of their affirmative defenses as part of its order granting declaratory judgment. For the reasons that follow, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4    Energym is a gymnastics studio that provides gymnastics instruction to children. Morreale, a gymnastics coach, is the owner of Energym. In 2016, four minors, identified in this case by the pseudonyms Joy Doe, Jennifer Doe, Joy White, and Joy Smith, received gymnastics instruction at Energym. Each of the four minors alleges that Hannon was one of their instructors there. On or about December 7, 2016, Hannon was arrested and charged with criminal sexual assault arising out of his conduct involving certain students of Energym who were minors. Energym thereafter gave notice of Hannon's arrest and the allegations against him to its commercial general liability insurer, Markel.[1]

_____

[1] Markel issued one commercial general liability policy to Energym for the policy period of August 9, 2015, to August 9, 2016, and a second policy for the policy period of August 9, 2016, to August 9, 2017. There is no difference in the language of the provisions of these two policies involved in this appeal. Thus, for the sake of simplicity, we refer to these simply as "the policy" in this decision.

¶ 5        On January 20, 2017, Markel sent a letter to Energym and Morreale, stating that the policy at issue did not provide coverage for claims arising out of sexual abuse or molestation. After setting forth certain policy terms and exclusions, it stated that it was disclaiming coverage for the loss and "will not be handling any claim that may arise out of any alleged sexual misconduct." It further stated, "We will not make any defense, expense or indemnity payments on your behalf." It also stated that Markel's position was based on information then available to it and could be revised. It acknowledged that suit had not then been filed and stated, "In the event you receive notice that a suit has been filed, please forward the suit and any additional information to our attention as soon as possible so that we can evaluate the specific allegations under the policy."

¶ 6        At the time Markel sent this letter, it was unaware that an underlying complaint had already been filed against Energym, Morreale, and Hannon by Jane Doe and John Doe, individually and on behalf of their minor child, Joy Doe (Joy Doe complaint). The Joy Doe complaint alleged that in 2016, Joy Doe had been enrolled in a class at Energym instructed by Hannon, and that "Hannon sexually assaulted Joy during one or more sessions of the class while teaching as an instructor and agent employed by Energym and Morreale." After learning of this suit, Markel filed the instant action on February 8, 2017, seeking a declaration that it owed no duty to defend or indemnify Energym, Morreale, or Hannon for claims asserted in the Joy Doe complaint or any claim or suit arising from Hannon's alleged sexual abuse of minor students at Energym.

¶ 7        Among several bases raised by Markel's complaint in support of its contention that it owed no duty to defend was that coverage was excluded under an endorsement to the policy titled the "Illinois sexual abuse or sexual molestation exclusion – youth related organizations" (youth related organizations exclusion). This exclusion provided in pertinent part as follows:

          "This insurance does not apply to 'bodily injury', 'property damage', 'personal and

advertising injury' arising out of:

    1.     The actual or threatened sexual abuse or sexual molestation by anyone of any person in the care, custody, or control of any insured; or

    2.     The negligent:

        a.     Employment;

        b.     Investigation;

        c.     Supervision;

        d.     Reporting the proper authorities, or failure to so report; or

        e.     Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above.

This endorsement applies to risks involved with the recreational, physical or educational care and development of children, including, but not limited to: amateur sports organizations, dance and performing arts studios, youth and recreation facilities, gymnastics clubs and studios, martial arts studios, schools, daycares, camp, churches, and other similar risks with these exposures."

¶ 8      On April 28, 2017, a second underlying complaint was filed against Energym, Morreale, and Hannon. It was filed by Jeffrey Doe, individually and as guardian and next friend of Jennifer Doe, a minor (Jennifer Doe complaint). It alleged that on and before November 25, 2016, Jennifer Doe had participated in an open-gym program at Energym supervised by Hannon, in which Hannon "proceeded to molest, fondle, touch and/or thrust the Plaintiff's hips, buttocks and genitals with his hands and groin" and "propositioned the Plaintiff to accompany him into a private room for

further acts." Following the filing of the Jennifer Doe complaint, Markel filed an amended complaint for declaratory judgment in this case, seeking a declaration that it owed no duty to defend or indemnify Energym, Morreale, or Hannon for claims asserted in the Joy Doe complaint, the Jennifer Doe complaint, or any claim or suit arising from Hannon's alleged sexual abuse of minor students at Energym. It contended that, among other reasons, the youth related organizations exclusion barred coverage for the claims.

¶ 9        Energym and Morreale filed an answer and affirmative defenses to Markel's amended complaint for declaratory judgment and a counterclaim for declaratory judgment and other relief. Their first affirmative defense was that Markel breached its obligations under the insurance contract when it "preemptively" disclaimed coverage through its letter of January 20, 2017, before it had reviewed the factual allegations of any complaint against its insureds, and Markel should therefore be precluded from seeking to enforce any provisions of a contract it had breached. Their second affirmative defense incorporated the first and alleged that, as a consequence of its breach, Markel had waived and forfeited any right to enforce provisions of the policy favorable to it.

¶ 10        In Count I of their counterclaim, they sought a declaratory judgment that Markel had an obligation to defend them against the allegations of the Joy Doe and Jennifer Doe complaints. Among the contentions raised for why the policy provided coverage for these claims was their contention that the youth related organizations exclusion relied on by Markel was contradicted by another exclusion, the "Illinois sexual abuse or sexual molestation exclusion" (sexual abuse or molestation exclusion). That exclusion provided in pertinent part as follows:

>        "It is agreed this policy does not provide coverages for claims or suits seeking
>
>        damages, including defense of same, for any person who actively participates in the act of
>
>        sexual molestation or physical or mental abuse of any person.

However, notwithstanding the foregoing, the insured shall be protected under the terms of this policy as to any claim and/or allegation which may be covered by the policy upon which suit may be brought against him, for any such alleged behavior by an insured unless judgment or final adjudication adverse to the insured shall establish that such behavior occurred as an essential element of the cause of action so adjudicated."

Energym and Morreale contended in Count I that the last paragraph of the sexual abuse or molestation exclusion above would be rendered illusory under Markel's interpretation of the youth related organizations exclusion. In Count II, they alleged that Markel's "anticipatory repudiation of its policy obligations" through its letter of January 20, 2017, was vexatious and unreasonable, and they were therefore entitled to their attorney fees, costs, and a penalty under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2016)).

¶ 11     Markel filed a motion to strike or dismiss the affirmative defenses pled by Energym and Morreale to its amended complaint for declaratory judgment. It also filed a motion to dismiss their counterclaims. The trial court granted Markel's motions. It struck Count I of the counterclaim on the basis that it was "unnecessarily duplicative" of the issue already before the court in the amended complaint for declaratory judgment. It struck Count II on the basis that it failed to state a claim for anticipatory repudiation, reasoning that the letter of January 20, 2017, was not a clear manifestation by Markel of an intent not to perform its contractual obligations. It also struck their first affirmative defense, construing it also to allege anticipatory repudiation and finding, for similar reasons, that it failed to plead facts that Markel's actions amounted to anticipatory repudiation. Finally, it struck the second affirmative defense, finding that it failed to plead facts that Markel had intentionally relinquished any right so as to establish waiver.

¶ 12     After that occurred, two additional underlying complaints were filed against Energym,

Morreale, and Hannon. One was filed by Jane White and John White, individually and on behalf of their minor child, Joy White (Joy White complaint). It alleged that Joy White attended a class at Energym beginning in about February 2016, that she informed her mother "that Hannon had touched her 'down there' while spotting her during gymnastics moves," and that "Hannon assaulted Joy during one or more sessions of the [t]umbling [c]lass while teaching as an instructor and agent employed by Energym and Morreale." The other complaint was filed by Jane Smith and John Smith, individually and on behalf of their minor child, Joy Smith (Joy Smith complaint). It alleged that Joy Smith had attended Energym's open gym sessions from September 2016 to November 2016, that she told her mother that Hannon " had 'stuck his finger up her butt' and had done the same to other children," and that "Hannon assaulted Joy during one or more sessions of the [c]lass while teaching as an instructor and agent employed by Energym and Morreale."

¶ 13    Following the filing of these two additional underlying complaints, Markel filed the instant second amended complaint for declaratory judgment, seeking a declaration that it owed no duty to defend or indemnify Energym, Morreale, or Hannon for claims asserted in any of the four underlying complaints, or any claim or suit arising from Hannon's alleged sexual abuse of minor students at Energym. Again, among the contentions it raised for why coverage was excluded was the fact that the youth related organizations exclusion barred coverage for the claims.

¶ 14    Energym and Morreale filed an answer and affirmative defenses to Markel's second amended complaint for declaratory judgment and amended counterclaims for declaratory judgment and other relief. For the stated purpose of preserving their right to seek appellate review, they repled their previously-dismissed first and second affirmative defenses and Counts I and II of their counterclaim. They also added third, fourth, and fifth affirmative defenses. Their third affirmative defense was again that Markel had itself breached is policy obligations by disclaiming coverage

in its letter of January 20, 2017, and it could not enforce a contract that it had breached. The fourth affirmative defense was that, as a consequence of Markel's breach, it had waived its right to enforce the provisions of the policy. The fifth affirmative defense was that, as a consequence of its breach, Markel forfeited any right to enforce the provisions of the policy. Count III of their amended counterclaims again sought a declaratory judgment that Markel had an obligation to defend Energym and Morreale against the allegations of the four underlying complaints. Count IV again alleged that Markel had committed vexatious and unreasonable conduct through its "anticipatory repudiation of its policy obligations" in the letter of January 20, 2017, and by attempting to mislead the court as to the contents of its policy by failing to address the sexual abuse or molestation exclusion.

¶ 15    Markel filed a motion to strike these affirmative defenses, dismiss the counterclaims, and for a judgment on the pleadings in its favor on its second amended complaint. The trial court granted this motion. It dismissed Counts I and II of the amended counterclaims of Energym and Morreale on the same grounds as in the previous order. It also found that Count III of the amended counterclaims should be dismissed for the same reasons it had dismissed Count I, and that Count IV should be dismissed for the same reasons as Count II. It further found, with respect to Count IV, that Markel was not misrepresenting the facts of the case to the court, but rather it simply did not discuss a policy exclusion that it considered to be irrelevant. With respect to the new affirmative defenses, the trial court struck the third affirmative defense for the same reasons that it had struck the first affirmative defense, and it struck the fourth affirmative defense for the same reason it had struck the second affirmative defense. It struck the fifth affirmative defense on the grounds that Energym and Morreale had failed to allege a forfeiture, as they agreed that Markel had not failed to make the timely assertion of a known right.

¶ 16    The trial court also granted judgment on the pleadings in favor of Markel on the second amended complaint. It went through in detail all of the factual allegations and theories of liability asserted against Energym and Morreale in the four underlying complaints, and it concluded that all the claims therein were excluded from coverage by the youth related organizations exclusion. In doing so, it rejected the argument that the youth related organizations exclusion contradicted and rendered illusory the coverage preserved under the sexual abuse or molestation exclusion or that it was void as against public policy. It thus granted the declaratory judgment that Markel owes no duty to defend or indemnify against the claims alleged in the four underlying lawsuits.

¶ 17    Energym and Morreale then filed a timely notice of appeal.

¶ 18                                II. ANALYSIS

¶ 19    This appeal comes before the court on the trial court's granting of a motion for judgment on the pleadings, a motion to dismiss counterclaims, and a motion to strike affirmative defenses. These are all motions for relief under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), which we review *de novo*. *Bennett v. Chicago Title & Trust Co.*, 404 Ill. App. 3d 1088, 1094 (2010). A motion to strike or dismiss an affirmative defense or counterclaim admits all well-pleaded facts and attacks only the legal sufficiency of the pleading. *Jordan v. Knafel*, 355 Ill. App. 3d 534, 539 (2005); *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 630 (1993). A motion for judgment on the pleadings is properly granted if the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 20    We choose to address first the argument by Energym and Morreale on appeal that the trial court erred in dismissing Counts I and III of their amended counterclaims. In both of these counts, Energym and Morreale sought a declaratory judgment that Markel had an obligation to defend

them against the allegations of the underlying complaints. The trial court dismissed both counts on the basis that the declaratory judgment sought in them was the "mirror image" of the declaratory judgment sought by Markel in its second amended complaint. It found that the amended counterclaims and the second amended complaint involved the same underlying lawsuits and insurance policies, with the former seeking a declaration that coverage existed and the latter seeking a declaration that coverage did not exist. It thus concluded that Counts I and III of the amended counterclaims were "unnecessarily duplicative" of the issues already placed before the court by the second amended complaint.

¶ 21        On appeal, Enegym and Morreale argue that the trial court erred in dismissing Counts I and III of the amended counterclaims, because "[their] view of the actual controversy differed from Markel's in a number of important respects." They point out that, in particular, the counterclaims contend that both the sexual abuse or molestation exclusion and the youth related organizations exclusion must be considered, whereas the second amended complaint relies only on the youth related organizations exclusion.

¶ 22        Where a purported counterclaim for declaratory judgment does not state a cause of action independent of that raised in the complaint or request affirmative relief other than a judicial declaration that the plaintiff is not entitled to the relief sought in the complaint, is not a true counterclaim and should be stricken. *Carmichael v. Union Pacific R.R. Co.*, 2019 IL 123853, ¶¶ 31, 36; see also 735 ILCS 5/2-608(c) (West 2018) ("Every counterclaim *** shall be complete in itself"). "A counterclaim that requests no affirmative relief and only seeks to defeat the plaintiff's claims is really an affirmative defense, not a counterclaim." *Carmichael*, 2019 IL 123853, ¶ 29. Also, it has long been the law that where the answer to a complaint for declaratory judgment meets and controverts the issues raised by the complaint, no counterclaim is required for the court to

declare the rights of the parties, regardless of which party may prevail. *Johnson v. Town of the City of Evanston*, 39 Ill. App. 3d 419, 423 (1976) (citing *Burgard v. Mascoutah Lumber Co.*, 6 Ill. App. 2d 210, 218-19 (1955)); see also *West Bend Mutual Insurance Co. v. Mulligan Masonry Co.*, 337 Ill. App. 3d 698, 702 (2003).

¶ 23     Here, it is evident that Counts I and III of the amended counterclaims by Energym and Morreale stated no independent cause of action against Markel that was different from the one already placed at issue by Markel's second amended complaint.[2] For this reason, they were legally insufficient as counterclaims. The fact that they relied on a different provision of the same policy than the provision on which the second amended complaint relied does not change this. Neither count of the counterclaim requested any specific affirmative relief from the trial court other than a declaration that Markel had an obligation to defend them against the allegations of the underlying lawsuits, which was simply another way of praying that Markel be denied the declaratory judgment that it had requested in its second amended complaint. Further, Energym and Morreale have not identified any way in which the striking of their counterclaims prejudiced their ability to present the merits of their argument or prevented the trial court from fully resolving the issues of the case. For these reasons, we hold that the trial court committed no error in dismissing Counts I and III of the amended counterclaims.

¶ 24     The remaining arguments raised by Energym and Morreale are largely interrelated. Principally, they urge this court to avoid reaching the question of whether the youth related organizations exclusion or any other policy provision excludes coverage for the underlying claims. They contend instead that we should view this case as one in which Markel should be estopped

---

[2] We agree with the trial court's assessment that, for purposes of this analysis, no substantive difference exists between Count I and Count III of the amended counterclaims.

from asserting any policy defenses to coverage, or should be found to have waived or forfeited its right to rely on them, because it is in material breach of the policy. They argue that Markel breached the policy simply by sending its letter of January 20, 2017, because it disclaimed coverage before it had reviewed the allegations of any underlying complaint against them. More specifically, they argue that a liability insurer may not make an "absolute coverage decision" before it is in possession of or has reviewed the factual allegations of an underlying complaint against its insured. This argument forms the underlying premise of the five affirmative defenses raised by Energym and Morreale to the second amended complaint. It is also an underlying factual basis of Counts II and IV of their amended counterclaims. All of these were stricken or dismissed by the trial court. Energym and Morreale argue that it erred in doing so.

¶ 25        The argument by Energym and Morreale that Markel breached its policy obligations by disclaiming coverage prior to reviewing an underlying complaint is based on the principle that an insurer's duty to defend is generally determined by comparing the allegations of an underlying complaint against the insured to the language of the insurance policy. *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 402 Ill. App. 3d 513, 521 (2010). If the facts alleged in an underlying complaint fall even potentially within the policy's coverage, then the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent. *Id.* Under the estoppel doctrine of insurance law, an insurer that breaches its duty to defend will be estopped from raising policy defenses to coverage. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 147-48 (1999). Under this doctrine, an insurer taking the position that a claim for which an insured seeks coverage is not covered by the policy "may not simply refuse to defend the insured," but rather it must either: (1) defend the suit under a reservation of rights, or (2) seek a declaratory judgment that there is no coverage. *Id.* at 150. "If

the insurer fails to take either of these steps *and is later found to have wrongfully denied coverage*, the insurer is estopped from raising policy defenses to coverage." (Emphasis added.) *Id.* at 150-51. "The estoppel doctrine applies only where an insurer has breached its duty to defend." *Id.* at 151. Thus, a court must inquire first whether the insurer had a duty to defend and whether it breached that duty. *Id.* "Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered," including in circumstances "where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." *Id.*

¶ 26      We find guidance for our analysis of the argument posed by Energym and Morreale in *Pope v. Economy Fire & Casualty Co.*, 335 Ill. App. 3d 41, 45 (2002), where this court considered whether the doctrine of estoppel should bar an insurer from raising policy defenses to coverage based on the insurer's sending to its insured a letter disclaiming coverage before the insured was actually served with a compliant in an underlying lawsuit. In that case, the insured had forwarded to her insurer an attorney's lien letter she had received, informing her that the child of one of the tenants to whom she rented an apartment had a claim against her "for injuries from 'lead poisoning contracted on the premises.' " *Id.* at 43-44. The insurer responded to her in a letter that it was " 'unable to indemnify [her] nor provide a defense for [her] in this matter' because the injury to plaintiff was due to the 'alleged exposure to lead paint,' " which was excluded from coverage under the policy. *Id.* at 44. The insured was not served with a lawsuit until 26 days after the date on which the insurer sent its letter. *Id.*

¶ 27      In the ensuing action for declaratory judgment by the plaintiff (as assignee of the insured), the plaintiff contended that the insurer's denial of coverage to the insured before she was served with the complaint in the underlying action was an anticipatory breach of the insurer's duty to

defend under the insurance contract. *Id.* at 45. In analyzing this argument, the court considered the nature of the insurer's contractual duty to defend, noting that the policy did not impose "a definite duty to perform some act in the future," but rather the duty imposed was "contingent upon the facts alleged in an underlying complaint if and when a complaint is filed by a third party to the insurance contract." *Id.* at 46. It thus determined that its analysis required the consideration of three issues: (1) whether there was a repudiation of the contract; (2) whether the conditions of the contract could be fulfilled had the contract not been allegedly repudiated; and (3) whether damages resulted from the alleged repudiation. *Id.*

¶ 28    The court found that the first consideration was arguably satisfied based on the insurer's unequivocal statement in its letter that it would not defend its insured before having an opportunity to determine whether there was a complaint alleging facts potentially within the scope of coverage. *Id.* at 47. The court found that the second consideration, whether the conditions of the contract could have been fulfilled if the contract had not been allegedly repudiated, meant in the context of insurance coverage that it must be shown that the potential for coverage existed if the contract had not been repudiated. *Id.* at 48. The court found that this inquiry necessarily involves comparing the allegations of the complaint to the language of the policy to determine whether there was indeed a potential for coverage. *Id.* The court found that when it compared the allegations of the filed complaint to the language of the policy, the allegations were insufficient as a matter of law to have created the potential for coverage. *Id.* at 48-49. For this reason, the court found that the plaintiff could not maintain an action for anticipatory breach. *Id.* at 49. It therefore rejected the plaintiff's argument that the insurer should be estopped from raising policy defenses. *Id.* at 51. It noted that estoppel is only applied if the insurer is later found to have wrongfully denied coverage under the policy. *Id.* (citing *Ehlco*, 186 Ill. 2d at 150-51). It thus recognized that, "by not defending under a

reservation of rights or filing a declaratory judgment action Economy risked being found in breach of its duty to defend," but because "Economy's duty was never triggered, it cannot be stopped from raising coverage defenses." *Id.* at 51-52.

¶ 29    Based on this court's analysis in *Pope*, we reject the argument by Energym and Morreale that Markel can be found to have breached its obligations under the policy solely on the basis that it sent the letter of January 20, 2017, disclaiming coverage before it had any underlying complaint to review. They have cited no authority that this act alone amounts to a breach, regardless of whether Markel actually had a duty to defend the underlying lawsuits that were ultimately filed. Instead, to determine whether the doctrine of estoppel can apply, we must consider whether the conditions of the contract could have been fulfilled absent Markel's letter. This means we must determine whether the potential for coverage existed if Markel had not sent its letter, and this requires us to compare the allegations of the underlying complaints that were ultimately filed to the language of the policy to determine whether the a duty to defend existed. See *id.* at 48; see also *Ehlco*, 186 Ill. 2d at 151.

¶ 30    In construing the language of the policy at issue, we are guided by familiar principles:

> " 'A court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. [Citation.] If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. [Citation.] Conversely, if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. [Citation.] In addition, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer. [Citation.] A court must construe the policy as a whole and take into account the type of

insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]' " *Wilson*, 237 Ill. 2d at 455-46 (quoting *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997)).

The threshold for pleading a duty to defend is low, with any doubt regarding such duty being resolved in favor of the insured. *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1023 (2008).

¶ 31     In this case, the trial court accepted Markel's argument that the youth related organizations exclusion excluded coverage for Energym and Morreale against all claims alleged against them in the four underlying complaints. The youth related organizations exclusion, which is set forth in its entirety above (*supra* ¶ 7), provides in pertinent part that:

> "This insurance does not apply to 'bodily injury' *** arising out of:
>
> 1.     The actual or threatened sexual abuse or sexual molestation by anyone of any person in the care, custody, or control of any insured; or
>
> 2.     The negligent:
>
>> a.     Employment;
>>
>> b.     Investigation;
>>
>> c.     Supervision;
>>
>> d.     Reporting the proper authorities, or failure to so report; or
>>
>> e.     Retention
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above."

It further provides that it applies to risks involved with the recreational, physical, or educational

care and development of children, including "gymnastics clubs and studios."

¶ 32    When comparing the language of the youth related organizations exclusion to the factual allegations of the underlying complaints, it is evident that all of the claims in them are alleging that the respective minor plaintiff suffered bodily injury arising out of the "actual or threatened sexual abuse or sexual molestation by anyone [Hannon] of any person [the respective minor] in the care, custody, or control of any insured [Energym]." The Joy Doe complaint contains the allegation that Joy Doe suffered injuries arising out of the fact that "Hannon sexually assaulted Joy during one or more sessions of the class while teaching as an instructor and agent employed by Energym and Morreale."[3] The Jennifer Doe complaint alleges that Jennifer Doe suffered injures arising out of the fact that, during the time Hannon was working as an instructor on the premises of Energym, "Hannon proceeded to molest, fondle, touch and/or thrust the Plaintiff's hips, buttocks and genitals with his hands and groin" and "propositioned the Plaintiff to accompany him into a private room for further acts." The Joy White complaint alleged that Joy White informed her mother "that Hannon had touched her 'down there' while spotting her during gymnastics moves," and that Joy White suffered injuries arising out of the fact that "Hannon assaulted Joy during one or more sessions of the [t]umbling [c]lass while teaching as an instructor and agent employed by Energym and Morreale." Finally, the Joy Smith complaint alleged that Joy Smith told her mother that Hannon " had 'stuck his finger up her butt' " and that Joy Smith suffered injuries arising out of the fact that "Hannon assaulted Joy during one or more sessions of the [c]lass

---

[3] An amended complaint was later filed which removed the word "sexually" from this sentence and other references to Joy suffering "sexual" assault. It continued to include the allegation that Joy White told her mother that she "did not like the way one of the instructors touched her without consent during [c]lass instruction," referring to Hannon, and it alleged that "Hannon assaulted Joy during one or more sessions of the [c]lass while teaching as an instructor and agent employed by Energym and Morreale." Energym and Morreale do not argue on appeal that this amendment to the Joy White complaint has any bearing on this court's analysis of the duty to defend.

while teaching as an instructor and agent employed by Energym and Morreale." We find that each of these underlying complaints is alleging bodily injury for which coverage is excluded by the first paragraph of the youth related organization exclusion.

¶ 33    Further, although each of the underlying complaints pleads multiple theories of liability against Energym and Morreale, we find that each of these theories is alleging that the respective minor plaintiff suffered bodily injury arising out of the "actual or threatened sexual abuse or sexual molestation by anyone [Hannon] of any person [the respective minor] in the care, custody, or control of any insured [Energym]." Each of the underlying complaints includes a count against Energym and Morreale titled to the effect of "negligent failure to protect a minor from attack." In each complaint, the respective plaintiffs allege in this count that Energym and Morreale knew that Hannon would have contact with their children in his job as instructor and, despite their actual or constructive knowledge of Hannon's criminal background, they failed to exercise reasonable care to control Hannon and prevent him from harming others. They allege that the failure of Energym and Morreale to exercise reasonable care to control Hannon was a proximate cause of the injuries suffered by the respective minor. However, the injuries alleged all arise out of the actual or threatened sexual abuse or molestation by Hannon of the respective minor while in the care, custody, or control of Energym. For this reason, the claims are excluded from coverage under the first paragraph of the youth related organizations exclusion.

¶ 34    The same is also true for all other counts in each of the underlying complaints. The complaints contain counts alleging negligent hiring and retention of Hannon. The gist of the factual allegations in these counts is that Energym and Morreale negligently failed to conduct a criminal background check on Hannon either before or after employing him to teach and have physical contact with children, and they negligently continued to employ him when a criminal background check would

have disclosed that his criminal background and status of being on probation made him unfit for such employment. They allege that this negligence placed Hannon in a position where he could and did injure children, and the failure of Energym and Morreale to exercise reasonable care and caution in the hiring and investigation of Hannon was a proximate cause of the assault of and injuries to the respective minor.

¶ 35    The counts for negligent supervision allege that Energym and Morreale had a duty to supervise Hannon, that they failed to do so or did so negligently, including by failing to employ any procedures to determine whether Hannon was competent and fit for his job. The Joy Doe, Joy White, and Joy Smith complaints also specifically allege that they failed to supervise Hannon by failing to conduct a criminal background check either before or after he was hired and by continuing to employ him when a background check would have disclosed he was unfit for the position. All complaints allege that this negligence proximately caused the respective minor's injuries.

¶ 36    The Joy Doe and Jennifer Doe complaints both contain counts alleging that Energym and Morreale are liable under a theory of *respondeat superior* for battery and negligent infliction of emotional distress by Hannon of the respective minors. Although the counts against Hannon are not involved in this appeal, all the complaints contain counts alleging that Hannon's actions against the respective minors constitute a battery and the negligent infliction of emotional distress. The Joy Doe and Jennifer Doe complaints also seek to hold Energym and Morreale liable for these torts based on the agency or employment relationship between Hannon and Energym and Morreale.

¶ 37    The Jennifer Doe, Joy White, Joy Smith, and amended Joy Doe complaints each contain a count alleging premises liability against Energym and Morreale. (The Jennifer Doe complaint does

not name Morreale as a defendant in the count alleging premises liability.) With minor variation in verbiage, each of these three complaints alleges in its count for premises liability that "as a direct and proximate result of Energym's negligent and careless hiring and/or employment of Hannon, Energym created a dangerous condition for the children under its care." Each alleges that "[b]y advertising and guaranteeing a safe space for children, Energym voluntarily undertook the duty to protect its patrons, including the Plaintiff, from harm caused by its own employees, including Hannon." And each alleges that the respective minor was caused to suffer injuries and emotional distress "as a direct and proximate result of the dangerous condition."

¶ 38        Finally, the Jennifer Doe, Joy White, Joy Smith, and amended Joy Doe complaints contain a count alleging violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)) (Consumer Fraud Act). (The Joy White, Joy Smith, and amended Joy Doe complaints bring this count against both Energym and Morreale, while the Jennifer Doe complaint brings it only against Energym.) These counts alleged that Energym or Morreale had violated the Consumer Fraud Act by failing to inform parents or customers that Energym had not conducted criminal background checks on its instructors, including Hannon, or that it had hired a convicted felon (Hannon). The Joy White and Joy Smith complaints also allege that the Consumer Fraud Act was violated by Energym's failure to disclose that it failed to carry adequate insurance coverage for the acts of its employees. The counts alleged that as a result of the concealment of the material facts alleged, the respective minors were enrolled as students with Energym and were caused to suffer injuries and emotional distress.

¶ 39        With respect to each theory of legal liability against Energym and Morreale discussed above, the injuries alleged all arise out of the actual or threatened sexual abuse or molestation by Hannon of the respective minor, while the minor was a student and Hannon was an instructor at Energym.

Thus, regardless of the legal theory pled, the claim in each count is that the minor suffered bodily injury arising out of the "actual or threatened sexual abuse or sexual molestation by anyone [Hannon] of any person [the respective minor] in the care, custody, or control of any insured [Energym]." Thus, the first paragraph of the youth related organizations exclusion applies to exclude coverage for all claims of the underlying complaints.

¶ 40     Energym and Morreale argue that paragraph 1 of the youth related organization exclusion does not apply to exclude coverage in this case, because it only excludes injuries arising out of sexual abuse or molestation by anyone of any person "in the care, custody, or control of any insured," and Hannon was not an insured under the policy. They state that, because Hannon "could not have had offensive physical contact with [his victims] any other way," each of them "was necessarily in the care, custody, or control of Joseph Hannon," *i.e.*, a non-insured. Thus, they characterize the underlying claims as being for "molestation by [a] non-insured employee[ ]," which they contend is not clearly excluded under the policy.

¶ 41     We reject this argument by Energym and Morreale. Their argument ignores the fact that paragraph 1 of the exclusion refers to injuries arising out of the sexual abuse or molestation "by *anyone* of any person in the care, custody, or control of *any* insured." (Emphases added.) The exclusion applies to injuries arising out of sexual abuse or molestation "by anyone," not only by an insured. Thus, the exclusion applies to alleged sexual abuse or molestation by Hannon, even if he is a "non-insured employee[ ]." Further, the exclusion applies to the sexual abuse or molestation of any person in the care, custody, or control of "any insured," which would include Energym. Here, the minors were in the care, custody, or control of Energym when they were at the Energym studio taking gymnastics classes or participating in the open gym. We do not interpret the argument of Energym or Morreale to seriously dispute the notion that the minors could simultaneously be in

the care, custody, or control of Energym, even it could also be said that at the same time they were in the care, custody, or control of Hannon as an instructor. Thus, as discussed above, we find that paragraph 1 of the youth related organizations exclusion excludes coverage, because all counts of the underlying complaints allege bodily injury arising out of the actual or threatened sexual abuse or molestation "by anyone [Hannon] of any person [the respective minors] in the care, custody, or control of any insured [Energym]."

¶ 42    Based on our conclusion that coverage is excluded for all counts of the underlying complaints under paragraph 1 of the youth related organizations exclusion, we need not address the argument by Energym and Morreale that paragraph 2 of the youth related organizations exclusion is inapplicable in this case as a basis for excluding coverage.

¶ 43    Energym and Morreale also argue that, if no claim of sexual misconduct committed by any person can ever be covered by the policy based on the youth related organizations exclusion, then the coverage afforded by the second paragraph of the sexual abuse or molestation exclusion is rendered illusory. As set forth above (*supra* ¶ 10), that exclusion provides:

> "It is agreed this policy does not provide coverages for claims or suits seeking damages, including defense of same, for any person who actively participates in the act of sexual molestation or physical or mental abuse of any person.
>
> However, notwithstanding the foregoing, the insured shall be protected under the terms of this policy as to any claim and/or allegation which may be covered by the policy upon which suit may be brought against him, for any such alleged behavior by an insured unless judgment or final adjudication adverse to the insured shall establish that such behavior occurred as an essential element of the cause of action so adjudicated."

Energym and Markel argue that the second paragraph of this exclusion provides that they shall be

"protected" (*i.e.*, defended) in the event that suits such as the underlying lawsuits in this case are filed against them. They argue that applying the youth related organizations exclusion renders the second paragraph of the sexual abuse or molestation exclusion as surplusage and effectively reads it out of the policy, and that to give it effect requires the conclusion that Markel has a duty to defend Energym and Morreale.

¶ 44    We find that both exclusions can be given effect. First, we reject the premise of Energym and Morreale that giving effect to the youth related organizations exclusion means that "no claim of sexual misconduct, no matter by whom committed, can ever be covered by the policy." Rather, the youth related organization exclusion excludes coverage for claims involving sexual abuse or molestation "of any person in the care, custody, or control of any insured." It further specifically indicates that it applies to risks involved in the recreational, physical, or educational care and development of children, including, among other things, gymnastics clubs and studios. Thus, if a complaint were filed against Energym or Morreale alleging that one of their employees had committed sexual abuse or molestation of a person who had never been in their care, custody, or control for any reason associated the recreational, physical, or educational care and development of children, then the youth related organizations exclusion would not apply.[4] In such a case, the provisions of the sexual abuse or molestation exclusion could be given effect as coverage would not be excluded by the youth organizations exclusion. Thus, the provisions of the sexual abuse or molestation exclusion are not rendered illusory or surplusage based on the existence of the youth

---

[4] Say, for example, they were sued by an adult alleging that she had come to the Energym premises to repair some broken equipment when she was sexually assaulted by an Energym employee. The plaintiff in that case would not be a "person in the care, custody, or control of any insured," nor would the risk involved be one associated with the recreational, physical, or educational care or development of children. Thus, there are situations in which an insured could be sued for injuries arising out of sexual abuse or molestation for which coverage would not be excluded by the youth related organizations exclusion.

related organizations exclusion.

¶ 45    However, in any case where the sexual abuse or molestation exclusion applies, there is an exception to that exclusion in the second paragraph. The exception provides that, notwithstanding the exclusion, "the insured shall be protected under the terms of this policy as to any claim and/or allegation *which may be covered by the policy* upon which suit may be brought against him." (Emphasis added.) Under its plain language, the protection contemplated by the exception applies only to claims or allegations "which may be covered by the policy." If a claim or allegation is not "covered by the policy" because a different exclusion applies to exclude coverage under the policy, then the protection contemplated by the exception to the exclusion would not apply. See *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 498 (1985) (the fact that one exclusion contains an exception preserving coverage granted under the insuring provision does not prevent coverage from being limited by a different exclusion).

¶ 46    As this case demonstrates, some claims will not be covered by the policy because the youth related organizations exclusion excludes coverage; in such cases, the exception to the sexual abuse or molestation exclusion would not apply because the claim is not otherwise "covered by the policy." But as discussed above, there could be claims involving sexual abuse or molestation for which the youth related organizations exclusion does not exclude coverage; in such cases, the youth related organizations exclusion would not prevent the exception to the sexual abuse or molestation exclusion from applying by excluding the claim from being "covered by the policy." As the exception can be applied in appropriate cases, it is not rendered illusory or surplusage by the youth organization exclusion. Here, assuming *arguendo* that the sexual abuse or molestation exclusion applies, Energym and Morreale would not be "protected" under the exception to it because the youth related organizations exclusion prevents these claims from being "covered by

- 24 -

the policy." Therefore, we reject the arguments of Energym and Morreale that the exception to the sexual abuse or molestation exclusion requires Markel to defend them in this case.

¶ 47    Energym and Morreale argue that if Markel's interpretation of the youth related organizations exclusion is plausible, this could should find that the exclusion is ambiguous and construe it against Markel as its drafter. However, a provision of an insurance policy is not rendered ambiguous merely because the parties disagree as to its meaning. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Beyond this brief statement, Energym and Morreale do nothing to articulate or develop any argument as to why this exclusion is ambiguous. It is well-established that an appellant forfeits a point by failing to argue it. *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 45; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (appellant's argument "shall contain the contentions of the appellant and the reasons therefor"). We find therefore that Energym and Morreale have forfeited their argument that the youth related organizations exclusion is ambiguous.

¶ 48    Energym and Morreale next make an argument grounded in public policy concerning the exclusions at issue. Although it is somewhat unclear, we do not interpret their argument to be that the youth related organizations exclusion or the sexual abuse or molestation exclusion should be invalidated as against public policy.[5] Rather, they argue that, "[e]ven if the public policy of the State of Illinois does not completely prohibit molestation exclusions of the kind that Markel

---

[5] The closest they get to arguing that either exclusion should be invalidated as against public policy is one sentence in which they state, "To the extent that this court may not agree that the two Markel sexual molestation exclusions must be read together to compel Markel to provide a defense for Energym and Morreale, we submit that this court may need to consider the possibility that these exclusions are so contrary to the public policy of this state that they must be invalidated." If Energym and Morreale intended by this to argue that the exclusions should be invalidated as in violation of public policy, we would find this argument far insufficient to satisfy their "heavy burden of demonstrating a violation of public policy." *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 28.

inserted in its [c]ommercial [g]eneral [l]iability policies, this court must construe those exclusions in light of the public policies of this state, especially those that favor the protection of children." They cite a number of cases recognizing that the protection of children, and in particular the protection of children from sex offenders, is an important public policy of this state. See, *e.g.*, *Doe v. Coe*, 2019 IL 123521, ¶ 62; *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶¶ 36-37. They also cite cases recognizing the public policy consideration that liability insurance policies are not merely private contracts, but instead they operate to protect victims of injury who are third parties to the contract and should therefore be liberally interpreted in favor of coverage. See, *e.g.*, *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 438 (1991); *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 498 (1977); *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 506 (1998). They state that they are asking "for this court to keep in mind the compelling public policy in favor of protecting children, and particularly in protecting children from abuse, to accord that public policy the 'fundamental' priority to which it is entitled, and to evaluate the Markel molestation exclusions in light that public policy." They argue that "these public policies strongly argue in favor of a construction of the Markel molestation exclusions that, by compelling Markel to defend Energym and Morreale, at least keeps open the possibility that Hannon's victims might receive the recompense that they may be entitled to under law."

¶ 49		Cases involving the sexual abuse or molestation of minors by those in a position of authority naturally tug at the sympathies of the court and the court's desire to protect children. However, our sympathies about the possibility that insurance will be unavailable to compensate the minor victims of Hannon's alleged misconduct cannot overcome the plain language of the youth related organizations exclusion that excludes coverage for the claims at issue. Although we certainly

recognize and agree that the protection of minors from sexual offenders is an important public policy, we also agree with the trial court's assessment that enforcement of the youth related organizations exclusion actually promotes this public policy. The exclusion "encourages insureds to carefully screen and monitor their employees since the insureds are aware they will not receive insurance coverage if they employ an individual who commits acts that fall within the behavior outlined in the Youth Related [Organizations] Exclusion." Similarly, enforcement of the exclusion protects minors by ensuring that those responsible for the sexual abuse or molestation of minors cannot escape having to compensate minors financially for the harm they cause. In other words, enforcement of the exclusion ensures that "economic liability \*\*\* be placed with the same precision as moral liability is placed—squarely on the shoulders of the abuser." *Western States Insurance Co. v. Bobo*, 268 Ill. App. 3d 513, 521 (1994).

¶ 50      For these reasons, we hold that the youth related organizations exclusion excludes insurance coverage for Energym and Morreale for all claims against them in the four underlying complaints involved in this case. Based on this, we further hold that Markel did not have a duty to defend them against those underlying complaints.

¶ 51      Therefore, returning to the question of whether Markel's sending of the letter disclaiming coverage on January 20, 2017, prior to reviewing an underlying complaint was a breach of its duty to its insureds, we find that the condition that potentially could have arisen to cause this letter to amount to a breach—*i.e.*, the filing of an underlying complaint against the insureds that potentially fell within the coverage of the policy—ultimately did not in fact occur. *Pope*, 335 Ill. App. 3d at 48. Thus, as no duty to defend ever existed, any refusal by Markel to defend could not have been a breach of that duty, and application of the doctrine of estoppel is not appropriate. *Ehlco*, 186 Ill. 2d at 151; *Pope*, 335 Ill. App. 3d at 51-52.

¶ 52    Because we find as a matter of law that Markel did not breach its obligations under the insurance policy by sending its letter of January 20, 2017, we affirm the trial court's striking of the five affirmative defenses asserted by Energym and Morreale to the second amended complaint. We further affirm the trial court's granting of judgment on the pleadings in favor of Markel and its declaratory judgment that Markel owes no duty to defend or indemnify Energym or Morreale for claims alleged in the four underlying suits at issue.

¶ 53    Finally, based on our conclusion that Markel has no liability under the policy at issue, we affirm the trial court's dismissal of Counts II and IV of the amended counterclaims of Energym and Morreale, in which they sought as part of their taxable costs in the action their attorney fees, costs, and a penalty under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2016)). Where, as here, no coverage is owed under the policy, there can be no finding that the insurer acted vexatiously or unreasonably in denying the claim. *Rhone v. First American Title Insurance Co.*, 401 Ill. App. 3d 802, 815 (2010); *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 764 (2000) (insurer "cannot be liable for section 155 relief where no benefits are owed").

¶ 54                                    III. CONCLUSION

¶ 55    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 56    Affirmed.