2022 IL App (1st) 210265

FIRST DIVISION
August 15, 2022

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BOARD OF MANAGERS OF ROSEGLEN CONDOMINIUM ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2015 CH 626 |
| HARLEYSVILLE LAKE STATES INSURANCE COMPANY, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | Honorable Anna M. Loftus, Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Hyman and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     In a prior action commenced in 2011, plaintiff-appellant the Board of Managers of

Roseglen Condominium Association (Association) obtained a default judgment against the

Kirk Corporation (Kirk), which was insured by defendant-appellee Harleysville Lake States

Insurance Company (Harleysville). In order to collect on the judgment against Kirk, the

Association commenced this declaratory judgment action against Harleysville, seeking a

determination that Harleysville owed coverage to Kirk for the judgment in the 2011 action. The Association now appeals from the trial court's February 2021 order granting summary judgment to Harleysville and denying summary judgment to the Association. We now affirm. Because Harleysville did not receive notice of the underlying 2011 action against Kirk, it had no duty to defend or indemnify the resulting judgment entered against Kirk and in favor of the Association.

¶ 2                                    BACKGROUND

¶ 3        This insurance coverage dispute arises from underlying litigation by the Association concerning construction of the Roseglen Condominium (Condominium), a 62-unit residential development. The Association is the governing body of the Condominium. Roseglen Joint Venture (RJV) was the developer and seller of the Condominium.

¶ 4        Harleysville issued insurance policies to Kirk, which was the general contractor for the Condominium's construction. Kirk allegedly hired a number of subcontractors that were also involved in the construction.

¶ 5              Terms of the Harleysville Policies Issued to Kirk

¶ 6        Harleysville issued to Kirk policy No. MPA 2J2448 effective June 8, 2005, for a term of one year. That policy was renewed for four successive annual periods, through June 8, 2009. Harleysville then issued to Kirk policy No. MPA 000089307B, effective June 8, 2009, to June 8, 2010. The policies issued to Kirk specified:

> "We [(Harleysville)] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any

'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

The policies further specified that the insurance would apply only to bodily injury or property damage that was "caused by an 'occurrence.' "

¶ 7        The policies defined "Property damage" to include "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." The term "Occurrence" was defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶ 8        The policies elsewhere specified that, "[i]f a claim is made or 'suit' is brought against any insured," Kirk must "[i]mmediately record the specifics of the claim or 'suit' " and notify Harleysville "as soon as practicable." In addition, the policies required Kirk, as the insured, to "[i]mmediately send [Harleysville] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.' " The term "suit" was defined to mean "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." The policies do not define the term "claim."

¶ 9        *The Association Commences the 2009 Action*

*Against Kirk and Other Defendants*

¶ 10        Harleysville's records reflect that on or about February 9, 2009, it opened a file for a "Water Infiltration Case" under claim No. WO-833953-000, following an initial contact with Kirk's "owner and CFO."

¶ 11        On April 15, 2009, the Association filed a five-count complaint in the circuit court of Lake County, which commenced an action under case No. 09 L 0353. The 2009 complaint named as defendants Kirk, RJV, and a number of subcontractors allegedly involved in the Condominium's construction.

¶ 12        The Association alleged various defects in materials and workmanship at the Condominium, including with respect to installation of flashing, caulk joints, and the "exterior wall brick panel system." The defects allegedly resulted in leaks that damaged common elements as well as windows, drywall, garage ceilings, and interior finishings of the homes. Such defects allegedly caused "physical injury" to the Condominium from "repeated exposure to substantially the same general harmful conditions." The Association alleged that the property damage "was an accident," as it was not intended or expected by defendants.

¶ 13        Count I of the 2009 complaint alleged breach of contract against RJV and Kirk for failure to construct in compliance with unit owners' purchase agreements. Count II alleged breach of the implied warranty of habitability against RJV and Kirk. Count III asserted "Breach of The Implied Warranty of Habitability—Minton v. Richards" against Kirk and a number of other subcontractors, on the ground that RJV was insolvent.[1] Count IV alleged breach of the implied warranty of good workmanship and materials against RJV and Kirk. Count V was titled "Breach of the Implied Warranty of Good Workmanship—Minton v. Richards" and was

---

[1]*Minton v. Richards Group of Chicago* held that, where the purchaser of a newly constructed home "has no recourse to the builder-vendor and has sustained loss due to the faulty and latent defect in their new home caused by the subcontractor, the warranty of habitability applies to such subcontractor." 116 Ill. App. 3d 852, 855 (1983), *overruled by Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022.

directed against Kirk and a number of subcontractors. The Association sought damages "equal to the total costs of repair or replacement of" the defects, as well as other damages and costs.

¶ 14                                   *Kirk's Bankruptcy*

¶ 15        Neither RJV nor Kirk filed an appearance in the 2009 action. On July 16, 2009, Kirk filed a notice in the 2009 action, indicating that Kirk had filed for bankruptcy in May 2009.[2] *Board of Managers of Roseglen Condominium Ass'n v. Coleman Floor Co.*, 2013 IL App (2d) 121274-U, ¶ 7. Harleysville states that it was not notified of Kirk's bankruptcy.

¶ 16               *Harleysville Receives Notice of the 2009 Action*

                              *and Denies Coverage to Kirk*

¶ 17        Harleysville's claim file reflects that on or about September 24, 2009, the 2009 action was brought to its attention by Travelers Insurance. An entry dated October 2, 2009, reflects that Harleysville sent Kirk a letter stating that it was in the process of reviewing for coverage and that "[u]pon conclusion of cov[erage] review we will advise [Kirk] of Harleysville's position." On or about December 4, 2009, Harleysville's disclaimer of coverage was approved and mailed to Kirk.

¶ 18        The next entry in Harleysville's claim file is dated March 29, 2010, and states: "Suit Closed Date Entered by System." Harleysville's claim file does not reflect any other entries between March 2010 and the Association's commencement of the instant declaratory judgment action in January 2015.

¶ 19           *The Association's Voluntary Dismissal of the 2009 Action*

---

[2]The notice of bankruptcy filed in the 2009 action is not in the record in this appeal but is referenced in the Second District's order in *Board of Managers of Roseglen Condominium Ass'n v. Coleman Floor Co.*, 2013 IL App (2d) 121274-U, ¶ 7.

¶ 20    In June 2010, the Association voluntarily dismissed the 2009 Action. The matter was dismissed " 'without prejudice.' " *Id.* ¶ 9.

¶ 21                    *The Association Initiates the 2011 Action*

¶ 22    On February 8, 2011, the Association filed a complaint under case No. 11 L 110, alleging the same construction defects as in the 2009 complaint. The original complaint in the 2011 action named six subcontractors as defendants but did not name RJV or Kirk. *Id.* ¶ 10.

¶ 23    On May 4, 2011, the Association filed an amended complaint, which added RJV and Kirk as defendants in addition to the six subcontractors. In that pleading, the Association stated that in April 2011 it entered into an agreement with Kirk's bankruptcy trustee, under which the trustee assigned to the Association all of RJV or Kirk's claims against any other party for defects in the Condominium. The amended complaint alleged the same construction defects but contained 16 counts, including several claims by the Association in its capacity as assignee of Kirk and RJV's claims. *Id.* ¶ 12. As summarized by the Second District of this court:

> "Count I alleged breach of implied warranty of habitability against Kirk and the six subcontractors; count II alleged breach of contract against RJV and Kirk for failure to construct in compliance with the building code, plans, and specifications and with good workmanship and materials; count III alleged breach of implied warranty of habitability against RJV and Kirk; count IV alleged a claim for breach of contract against Kirk that RJV assigned to plaintiff for failure to construct in compliance with the building code, plans, and specifications and with good workmanship and materials; and counts V through XVI alleged claims assigned to plaintiff by RJV and Kirk for breach of contract

against the six subcontractors for failure to construct in compliance with the building code, plans, and specifications, and with good workmanship and materials." *Id.*

¶ 24 Four of the subcontractor defendants filed a joint motion to dismiss the amended complaint on several grounds, including that the Association's voluntary dismissal of the 2009 action operated as *res judicata*. *Id.* ¶ 13. The trial court granted that motion, and the Association appealed. *Id.* ¶¶ 15-16.

¶ 25 In November 2013, the Second District of our court entered an order concluding that *res judicata* applied to bar the claims against the subcontractor defendants and thus affirmed dismissal of counts V through XVI of the amended complaint. *Id.* ¶ 61. However, the Second District held *res judicata* did not apply with respect to the claims against RJV and Kirk, since those two parties consented to be named as defendants in the 2011 action. *Id.* ¶ 59. Thus, the Second District reversed the dismissal of the counts of the amended complaint directed against RJV and Kirk (counts I through IV) and remanded for further proceedings. *Id.* ¶ 61.

¶ 26 On October 15, 2014, the Association obtained a default judgment against RJV and Kirk in the amount of $2,640,246.17 plus costs.

¶ 27 *Commencement of the Association's Declaratory Judgment Action*

*Against Harleysville to Determine Coverage*

*for the Judgment Against Kirk in the 2011 Action*

¶ 28 On January 14, 2015, the Association commenced this action by filing a complaint for declaratory judgment against Harleysville, seeking to hold Harleysville liable for the amount of the default judgment against its insured, Kirk, in the 2011 action. On July 9, 2015, the Association filed an amended complaint. In August 2015, Harleysville moved to dismiss or

strike portions of the amended complaint. The court granted that motion and allowed the Association time to file a second amended complaint.

¶ 29    On November 12, 2015, the Association filed a second amended complaint for declaratory judgment. In that pleading, the Association referred to the 2009 action as the "Underlying Action" and alleged "[t]he Underlying Action was voluntarily dismissed and subsequently refiled" in case No. 11 L 110. The Association referred to the April 15, 2009, complaint in the 2009 action and the May 4, 2011, complaint in the 2011 action as the "complaints in the Underlying Action."

¶ 30    The second amended complaint contained a count for "Estoppel" (count I) and a count for "Coverage under the Harleysville Policies" (count II). In count I, the Association pleaded that there was "no substantial difference in the allegations made against Kirk in the Underlying Action" and that both the 2009 and 2011 complaints "alleged facts that potentially fall within the Harleysville Policies' coverage."

¶ 31    The Association pleaded that, "[a]fter receiving notice of the claims being made against Kirk, Harleysville refused to provide a defense to the Underlying Action" and did not file a declaratory judgment action.[3] The Association thus alleged that Harleysville breached its duty to defend Kirk, was estopped from raising policy defenses to coverage, and was liable for the full amount of the default judgment entered against Kirk and in favor of the Association.

¶ 32    In count II, the Association maintained that the alleged defects to the Condominium were "property damage" and caused by an "occurrence," as those terms were used in the policies issued by Harleysville to Kirk. In the prayer for relief, the Association sought a declaration

---

[3]The Association did not plead when or how Harleysville received such notice.

that "Harleysville forfeited any policy defenses due to its failure to provide Kirk with a defense and its failure to file a declaratory judgment action." The Association sought judgment in the amount of the October 2014 default judgment entered in the Association's favor against Kirk, plus postjudgment interest.

¶ 33    In September 2019, the Association moved for summary judgment, arguing that Harleysville was estopped from denying coverage for the default judgment entered against Kirk in the 2011 action, due to Harleysville's failure to defend Kirk in the 2009 action. Specifically, the Association argued that Harleysville "knew of the 2009 Action and neither defended Kirk nor filed a declaratory judgment action." Because the Association "alleged claims against Kirk that were potentially within Harleysville's policies," the Association urged that Harleysville was "estopped from denying coverage and liable for the amount of the Judgment against Kirk." The Association did not dispute that Harleysville did not receive notice of the 2011 action. Yet, the Association argued that since Harleysville breached its duty to defend Kirk in the 2009 action, Harleysville "cannot escape liability due to any lack of notice of the 2011 Action."

¶ 34    In December 2020, Harleysville responded to the Association's motion and cross-moved for summary judgment. Harleysville argued the Association had engaged in a "sleight of hand characterization of the underlying 2011 lawsuit as a refiling or continuation of the underlying 2009 lawsuit" but that they were actually "separate and distinct actions."

¶ 35    Harleysville emphasized that Kirk was required under the policies to notify Harleysville of a suit "as soon as practicable," yet Harleysville did not receive notice of the 2011 action before the 2014 default judgment. Harleysville argued that notice was a condition precedent to

coverage and, since "Kirk breached the notice provisions in failing to advise Harleysville of the 2011 Action," Harleysville had no duty to defend or indemnify the eventual judgment against Kirk.

¶ 36        Harleysville alternatively argued that, even if the 2011 action was deemed a "continuation of" the 2009 action, there could be no estoppel because Harleysville did not have a duty to defend Kirk in the 2009 lawsuit. That is, Harleysville claimed that the 2009 action did not allege damages because of "property damage" caused by an "occurrence" within the meaning of the policies issued to Kirk.

¶ 37        On January 26, 2021, the Association filed its response to Harleysville's motion for summary judgment and reply in support of its motion for summary judgment. The Association did not dispute that Harleysville did not receive notice of the 2011 lawsuit. However, the Association argued that Harleysville's breach of its duty to defend Kirk in the 2009 action was the "cause in fact of Harleysville not receiving notice." The Association urged that Harleysville "would have received actual notice of the 2011 Action" had it either defended Kirk in the 2009 action or filed a declaratory action. The Association otherwise urged that Harleysville's breach of its duty to defend Kirk in the 2009 action was a "material breach" that excused Kirk from having to provide notice of the 2011 action. The Association otherwise maintained that its allegations in the 2011 action fell at least potentially within the coverage of the Harleysville policies issued to Kirk.

¶ 38        In its reply, Harleysville maintained that, since it did not receive notice of the 2011 action, it had no duty to defend or indemnify Kirk in that lawsuit, regardless of its response to the 2009 action. Harleysville contended that any alleged breach of a duty to defend Kirk in the

2009 action had no bearing on whether it had a duty to defend or indemnify Kirk in the 2011 action. Harleysville otherwise maintained that it did not breach a duty to defend Kirk in the 2009 action because the allegations of the 2009 complaint did not fall within the applicable policies.

¶ 39 On February 26, 2021, the trial court entered an order granting summary judgment to Harleysville and denying the Association's summary judgment motion. In doing so, the court differentiated between the Association's 2009 and 2011 lawsuits against Kirk, finding that Harleysville's lack of notice of the 2011 action was dispositive:

"It is undisputed that Harleysville did not receive notice of the underlying action, *** Case No. 11 L 110 ('the 2011 Action.') Notice is a prerequisite to coverage. The failure to provide it to Harleysville relieved it of any purported duty to defend or indemnify the insured, the Kirk Corporation, in the 2011 Action."

¶ 40 The court found that the "failure to notify Harleysville of the 2011 Action contravened a prerequisite to coverage and was not excused." The court rejected the Association's argument that Harleysville was estopped from asserting lack of notice of the 2011 action, due to Harleysville's failure to defend Kirk in the 2009 action. Stating that "[i]t is axiomatic that the duty to defend is based on the allegations in the operative complaint, not a prior pleading or lawsuit," the trial court found that it "need not consider" the 2009 action. The court concluded that "the [e]stoppel doctrine does not apply to bar Harleysville's coverage defenses in the 2011 Action and it owes nothing to the Association as the judgment creditor."

¶ 41 On March 10, 2021, the Association filed a notice of appeal.

¶ 42 ANALYSIS

- 11 -

¶ 43     On appeal, the Association urges that the trial court erred in granting summary judgment in favor of Harleysville and denying its cross-motion for summary judgment. The Association requests that we reverse and enter judgment against Harleysville for "the remaining amount due on the October 15, 2014 judgment against Kirk," plus postjudgment interest.

¶ 44     The Association primarily contends that the trial court erred in declining to find that Harleysville was estopped from asserting policy defenses to coverage in the 2011 action, including lack of notice. The Association concedes that Harleysville did *not* receive notice of the 2011 action. However, citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127 (1999), the Association claims Harleysville was estopped from relying on lack of notice to avoid coverage in the 2011 action, because it had already breached a duty to defend Kirk in the 2009 action.[4] That is, the Association contends the complaint in the 2009 action "alleged facts potentially within coverage" and triggered a duty to defend Kirk, yet Harleysville denied coverage.

¶ 45     Apart from its reliance on estoppel, the Association argues that Harleysville's breach of its duty to defend Kirk in the 2009 Action was a "material breach" that "excused any further obligations of notice regarding the Association's claim," including with respect to the 2011 action. That is, the Association posits that Kirk had no duty to notify Harleysville of the 2011 action because Harleysville breached its duty to defend Kirk in the 2009 action. In this regard, the Association urges that "the 2009 Complaint and the 2011 Complaint were for the same claim" because they contained "identical allegations." The Association also suggests that

---

[4]Page 25 of the Association's opening brief references "[t]he fact that Harleysville did not receive notice of the 2011 Action."

Harleysville's claim file shows it "treated them as the same claim," because Harleysville "did not open a new claim file related to the 2011 action but instead logged this action for declaratory judgment under the same claim number" it used for the 2009 action.

¶ 46    The Association otherwise argues any lack of notice to Harleysville of the 2011 action should be excused since an insured is not required to undertake a "useless" act. It suggests that it would have been futile for Kirk to notify Harleysville of the 2011 action, given Harleysville's denial of coverage for the 2009 action.

¶ 47    Apart from its arguments addressing Harleysville's lack of notice of the 2011 action, the Association argues that the allegations in both the 2009 and 2011 lawsuits triggered Harleysville's duty to defend and to indemnify the eventual judgment against Kirk. The Association argues that the complaints in both actions alleged covered "property damage" caused by an "occurrence," as those terms are defined in the policies issued to Kirk. Specifically, the Association claims that the policies cover damage from subcontractors' faulty workmanship.

¶ 48    In sum, the Association asserts that (1) the allegations in 2009 action triggered Harleysville's duty to defend Kirk, (2) Harleysville breached its duty to defend Kirk in the 2009 action, and (3) that breach makes Harleysville liable for the default judgment entered against Kirk in the 2011 action, regardless of Harleysville's lack of notice of that lawsuit.

¶ 49    In its brief, Harleysville primarily asserts that we should affirm because it is undisputed that it did not receive notice of the 2011 action and that notice of the lawsuit was a condition precedent to coverage. For that reason, Harleysville urges it had no duty to defend or indemnify Kirk with respect to the 2011 action. Harleysville goes on to argue that whether it breached its

duty to defend Kirk in the 2009 action is irrelevant to whether it owed coverage for the "separate and distinct" 2011 action. Harleysville argues that estoppel does not apply where, as here, the insurer receives no notice of the immediately underlying lawsuit.

¶ 50 Harleysville similarly argues that its failure to defend Kirk in the 2009 action could not excuse Kirk's failure to notify Harleysville of the 2011 action. Harleysville notes the lack of precedent for the theory that a breach of a duty to defend in one suit excuses notice of future suits. Harleysville urges this theory conflicts with our supreme court's decision requiring actual notice of a lawsuit in order to trigger the duty to defend. See *The Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317 (1998). Harleysville alternatively argues that, in any event, the 2009 complaint did not trigger a duty to defend because it did not allege damages because of "property damage" or caused by an "occurrence" within the meaning of the policies.

¶ 51 As explained below, we conclude that summary judgment was properly entered for Harleysville for a simple reason: Harleysville did not have actual notice of the 2011 action, which is a prerequisite to a duty to defend. As Harleysville had no duty to defend Kirk in the 2011 action, it had no duty to indemnify the subsequent default judgment entered in that action against Kirk and in favor of the Association.

¶ 52 *Standard of Review*

¶ 53 "Summary judgment is appropriate only where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25 (quoting 735 ILCS 5/2-1005(c) (West 2012)). "Where parties to an insurance coverage declaratory judgment action submit cross-motions for

summary judgment, the parties 'agree that no factual issues exist and that the disposition of [the case] turns only on our resolution of purely legal issues. [Citation.] Accordingly, our review proceeds *de novo*.' " *First Mercury Insurance Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 23 (quoting *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010)).

¶ 54 We also keep in mind that "we review only the court's ultimate judgment, not its reasoning in support of that judgment." *Jarosz v. Buona Cos.*, 2022 IL App (1st) 210181, ¶ 29 (citing *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993)). Accordingly, " 'we may affirm the trial court's grant of summary judgment on any ground apparent from the record.' " *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶ 9 (quoting *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 648 (2009)).

¶ 55 *Whether Harleysville's Failure to Defend Kirk*

*in the 2009 Action Estopped Harleysville From Relying on*

*Its Lack of Notice of the 2011 Action*

¶ 56 We first address the Association's contention that, given Harleysville's denial of coverage for the 2009 action, Harleysville was estopped from asserting a lack of notice defense to avoid coverage for the 2011 action and default judgment. The Association invokes *Ehlco*, 186 Ill. 2d 127, to argue that Harleysville's breach of the duty to defend in the 2009 action bars Harleysville from relying on its lack of notice of the 2011 action as a defense to coverage for the latter action. We proceed to discuss the related concepts of an insurer's duty to defend and estoppel.

¶ 57 Duty to Defend and Estoppel

¶ 58    In *Ehlco*, our supreme court explained the scope of estoppel that arises from an insurer's breach of its duty to defend its insured. *Ehlco* reiterated that the duty to defend is determined by comparing the complaint and the policy:

> "Illinois law is well established that where an underlying complaint alleges facts within or potentially within policy coverage, 'the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent.' *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). The insurer may not refuse to defend 'unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.' (Emphasis in original.) *Wilkin Insulation Co.*, 144 Ill. 2d at 73." *Ehlco*, 186 Ill. 2d at 153.

¶ 59    Importantly, the estoppel doctrine "applies only where an insurer has breached its duty to defend." *Id.* at 151. That is:

> "Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, *or if the insurer's duty to defend was not properly triggered. These circumstances include where the insurer was given no opportunity to defend*; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage. [Citations.]" (Emphasis added.) *Id.*

¶ 60    If the insurer breaches its duty to defend, however, the estoppel doctrine "operates to bar the insurer from raising policy defense to coverage." *Id.* at 151-52. *Ehlco* set forth application of the doctrine as follows:

"The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. [Citations.]" *Id.* at 150-51.

¶ 61                    Estoppel Applies to Bar a "Late Notice" Defense

But Not a Complete Lack of Notice

¶ 62         The Association urges that since Harleysville breached its duty to defend Kirk in the 2009 action, Harleysville is estopped under *Ehlco* from relying on its lack of notice of the 2011 action to avoid coverage liability for the judgment against Kirk. Harleysville responds that *Ehlco* actually supports its position that estoppel applies to a "late notice" defense but does not apply if the insurer received "no notice" of a suit. Harleysville claims that, since it received no notice of the 2011 action, estoppel does not apply.

¶ 63         Upon a close reading of the *Ehlco* decision, we agree with Harleysville. *Ehlco* indicates that, where an insurer does not receive any notice of a lawsuit, no duty to defend is triggered because the insurer has "no opportunity to defend." *Id.* at 151. Absent a duty to defend, estoppel does not apply.

¶ 64         The facts of *Ehlco* illustrate the distinction between a late notice defense (to which estoppel applies) and a complete lack of notice (to which estoppel does not apply). In *Ehlco*, the plaintiff insurer (Wausau) sought declaratory relief that it did not owe coverage to its former insured

- 17 -

(Hines) for two underlying lawsuits alleging environmental contamination at sites in Arkansas and in Wyoming. Defendant, Ehlco, was a liquidating trust created to resolve Hines's liabilities following its dissolution. *Id.* at 131.

¶ 65    Regarding the Arkansas site, the United States Environmental Protection Agency (EPA) advised Hines in writing that it may be liable for environmental contamination. *Id.* at 132. Hines notified Wausau about the EPA letter, but Wausau responded that its policies did not provide coverage. *Id.* at 132-33. The EPA eventually filed a suit against Hines, leading to a consent decree in which Hines agreed to finance remedial actions at the Arkansas site. *Id.* at 133-34. Notably, the pleadings in Wausau's declaratory judgment action were "silent as to whether Wausau had notice of the filing" of the EPA's complaint. *Id.* at 133.

¶ 66    Separately, an action was filed against Ehlco, arising from environmental contamination at a Wyoming site formerly operated by Hines. *Id.* Ehlco notified Wausau of the Wyoming suit, but Wausau "did nothing other than request information." *Id.* at 134. Ehlco subsequently settled the Wyoming suit. *Id.*

¶ 67    In Wausau's declaratory judgment action, the circuit court granted Ehlco judgment on the pleadings, finding that Wausau breached its duty to defend and was estopped from asserting coverage defenses for both the Arkansas and Wyoming actions. *Id.* at 135. Our appellate court reversed in part, finding that Wausau was estopped from raising defenses to coverage other than a "late notice" defense. *Id.* at 137.

¶ 68    Our supreme court's analysis illustrated the distinction between a situation where an insurer lacks any notice, compared to late notice. The supreme court recognized that in *Cincinnati Cos.*, 183 Ill. 2d 317, it "held that the lack of a tender by the insured does not relieve

the insurer of its duty to defend if the insurer had 'actual notice' of the underlying suit. '[A]ctual notice' means that the insurer knows both 'that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies.' " *Ehlco*, 186 Ill. 2d at 143 (quoting *Cincinnati Cos.*, 183 Ill. 2d at 329-30).

¶ 69 Our supreme court observed that the pleadings in Wausau's declaratory judgment action were "silent on the factual issue of whether Wausau had actual notice" of the filing of the Arkansas lawsuit. *Id.* "Because the pleadings fail to demonstrate that Wausau had actual notice of the Arkansas suit, which would trigger Wausau's duty to defend that suit," our supreme court held that Ehlco was not entitled to judgment on the pleadings with respect to that lawsuit. *Id.* at 143-44. However, the supreme court held that the parties should be permitted to "amend their pleadings to address the actual notice issue in the circuit court." *Id.* at 144. Thus, the supreme court indicated that the insurer's duty to defend would not be triggered if the insurer lacked notice altogether.

¶ 70 Separate from whether Wausau received "actual notice" of the Arkansas lawsuit, our supreme court went on to hold that Wausau was estopped from asserting "late notice" policy defenses to coverage for either the Arkansas or Wyoming action. Our supreme court recognized some courts had found "late-notice defenses" exempt from the estoppel doctrine but concluded there was no such exception, as it would "contradict long established law governing the insurers' duty to defend and the consequences of breaching that duty." *Id.* at 152-53.

¶ 71 Estoppel Does Not Apply to Harleysville's Defense

of Lack of Notice of the 2011 Action

¶ 72      *Ehlco* does not support the Association's suggestion that Harleysville is estopped from relying on its lack of notice of the 2011 action. Indeed, our supreme court recognized that the insurer would have no duty to defend the Arkansas suit if it lacked "actual notice" of that lawsuit. See *id.* at 143-44. *Ehlco* illustrates that estoppel only applies where an insurer breaches its duty to defend after becoming aware of an underlying lawsuit. See *id.* at 153 (where an insurer "take[s] the position that a claim is not covered," the insurer "cannot simply refuse to defend the suit" but must either defend under a reservation of rights or initiate a declaratory judgment). However, estoppel is not implicated if an insurer lacked notice of a lawsuit and thus had no opportunity to respond to it. See *id.* at 151 (estoppel is not appropriate "where the insurer was given no opportunity to defend"). This is wholly consistent with our supreme court's holding that no duty to defend is triggered if an insurer lacks "actual notice of the underlying suit." *Cincinnati Cos.*, 183 Ill. 2d at 329-30.

¶ 73      As the parties conceded at oral argument, it is undisputed that Harleysville did not receive actual notice of the 2011 action (whether from Kirk, the Association, or any other source). That is, Harleysville never had an opportunity to take any action as to whether to defend that suit. We thus conclude that the estoppel doctrine does not apply.

¶ 74      In reaching this conclusion, we reject the Association's suggestion that Harleysville's alleged breach of a duty to defend Kirk in the voluntarily dismissed 2009 action could implicate estoppel for purposes of the 2011 action. We are aware of no case suggesting that estoppel from an insurer's breach in one lawsuit carries over to a separate, subsequent lawsuit. Rather, supreme court precedent indicates that the duty to defend and estoppel are determined by reference to the complaint in the immediate underlying action for which coverage is at issue.

See *Ehlco*, 186 Ill. 2d at 150 ("The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered *** may not simply refuse to defend the insured."); *id.* at 153 ("where an underlying complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend its insured" (internal quotation marks omitted)); *Cincinnati Cos.*, 183 Ill. 2d at 329-30 ("in order to have actual notice sufficient to locate and defend a suit, the insurer must know *** that the complaint falls within or potentially within the scope of the coverage of one of its policies"). In the instant declaratory judgment action, the Association sought coverage for the default judgment against Kirk in the 2011 action. Whether Harleysville breached a duty to defend in the 2009 action is irrelevant to application of estoppel in the 2011 action.

¶ 75                                  There Is No Support for the Assertion that the

2009 and 2011 Actions Were the "Same Claim"

¶ 76    We proceed to reject the Association's other arguments that Harleysville's response to the 2009 action allows us to avoid the consequence of its lack of notice of the 2011 action. Among these, the Association urges that both lawsuits "were for the same claim." The Association points out that both complaints alleged the same construction defects and property damage. The Association also urges that Harleysville's claim file shows that it "treated them as the same claim" because, when the Association filed this declaratory judgment action in 2015, Harleysville "logged this action *** under the same claim number it opened in February 2009 for the Association's claim and under which it also had logged the 2009 Complaint." The Association thus suggests that, because the two actions were for the same "claim,"

Harleysville's notice of the 2009 action excused any need for it to receive actual notice of the 2011 action.

¶ 77     The Association does not cite any precedent (and we have found none) suggesting that a voluntarily dismissed suit and a refiled lawsuit are the same "claim" for insurance purposes. Notwithstanding the similar factual allegations in the voluntarily dismissed 2009 action and the refiled 2011 action, we decline to find that they were the same claim. To do so would effectively ignore the requirement that Harleysville receive "actual notice" for the 2011 lawsuit. See *Cincinnati Cos.*, 183 Ill. 2d at 329 ("where the insured has not knowingly decided against an insurer's involvement, the insurer's duty to defend is triggered by actual notice of the underlying suit").

¶ 78     Moreover, treating a refiled lawsuit as separate from a voluntarily dismissed suit is consistent with our supreme court's recognition that "[a] voluntary dismissal pursuant to section 2-1009 [of the Code of Civil Procedure] terminates the entire action" (*Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 39), and that "[a] refiled action pursuant to section 13-217 [of the Code of Civil Procedure] is not a restatement of the old action, but an entirely new and separate action" (*id.* ¶ 48). To treat the refiled 2011 action as the same "claim" as the voluntarily dismissed 2009 action would be incongruous with *Richter*.

¶ 79     Moreover, despite their similar factual allegations, the complaints in the 2009 action and the 2011 action were not identical, as the latter contained several counts based on the assignment of claims to the Association from Kirk and RJV. Indeed, the Association relied on this distinction to contest application of *res judicata* in its prior appeal before the Second District. See *Board of Managers*, 2013 IL App (2d) 121274-U, ¶ 39 (noting that the

Association disputed there was an "identity of parties" between the two actions because it sued in an individual capacity in the 2009 case but "brought the assigned claims in the 2011 case as RJV's and Kirk's assignee").

¶ 80     We also are unconvinced by the Association's reliance on Harleysville's claim file to argue that Harleysville treated both actions as the same claim. Even assuming such extrinsic evidence could be considered, it would not support the Association's position. The claim file reflects no activity recorded between the termination of the 2009 action and the filing of the instant declaratory judgment. As it contains no mention of the 2011 action, the claim file merely corroborates that Harleysville did not receive actual notice of that lawsuit.

¶ 81                         The Failure to Defend Kirk in the 2009 Action

                    Was Not A "Material Breach" That Excused Harleysville's

                              Lack of Notice of the 2011 Action

¶ 82     We also reject the Association's assertion that Harleysville's alleged failure to defend Kirk in the 2009 action was a "material breach" of the relevant policies, such that Kirk was excused from any obligation to notify Harleysville of the 2011 action. There are a number of problems with the Association's "material breach" argument.

¶ 83     First, it is internally inconsistent for the Association to argue that Harleysville committed a material breach (which would effectively end the policies), as the Association wants to maintain Harleysville's coverage obligations under the policies. A material breach is one that is so substantial and fundamental that it "defeat[s] the objects of the parties in making the agreement" or "renders performance of the rest of the contract different in substance from the original agreement." (Internal quotation marks omitted.) *InsureOne Independent Insurance*

*Agency, LLC v. Hallberg*, 2012 IL App (1st) 092385, ¶ 43. A material breach justifies nonperformance by the other party and "must be so material and important to justify the injured party in regarding the whole transaction at an end." (Internal quotation marks omitted.) *Id.*

¶ 84    Here, the Association suggests that Harleysville materially breached the policies by failing to defend Kirk in the 2009 action, yet it does not argue that the policies were effectively terminated. To the contrary, the Association argues that Harleysville owed coverage under the same policies for the judgment entered in the 2011 action. The incongruity of this position is analogous to the situation in *Radiant Star Enterprises, L.L.C. v. Metropolis Condominium Ass'n*, 2018 IL App (1st) 171844, a declaratory judgment action where plaintiff sought to enforce an arbitration clause. Defendant raised an affirmative defense that plaintiff was in "material breach" of the arbitration provision because plaintiff did not comply with a prior arbitration award and urged on appeal that the prior breach "precluded plaintiff from relying on the arbitration clause with respect to new disputes." *Id.* ¶¶ 21, 49. This court found that defendant's argument was "internally inconsistent" insofar as it suggested a breach that excused defendant from performance and terminated the arbitration clause, yet defendant did not seek revocation of the arbitration agreement. *Id.* ¶ 56. Here, the Association's material breach argument suffers a similar logical flaw. The Association posits that Harleysville committed a "material breach" of the policies by failing to defend Kirk in the 2009 action, yet it seeks a declaration that Harleysville owed coverage to Kirk for the judgment in the 2011 action.

¶ 85    The Association's material breach argument fails for a more fundamental reason: "actual notice" is required to trigger a duty to defend a lawsuit, independent of any contractual duty

by the insured to give notice. *Cincinnati Cos.*, 183 Ill. 2d at 329. That is, even if Kirk was excused from its notice obligations under the policies, Harleysville as the insurer would still need "actual notice" of the 2011 action to trigger its duty to defend, which requires that the insurer "know[s] both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies." *Id.* at 329-30. In short, the duty to defend does not depend on the insured providing notice. See *Alcan United, Inc. v. West Bend Mutual Insurance Co.*, 303 Ill. App. 3d 72, 84 (1999) (holding that duty to defend was triggered when insurer was notified of suit by another insurance company rather than the insured, "since it is not tender by the insured that creates the duty to defend but knowledge by the insurer that a defense may be required" (citing *Cincinnati Cos.*, 183 Ill. 2d at 329)).

¶ 86                    Case Law That an Insured Need Not Take a "Useless Act"

Does Not Control Where the Insurer Lacks Actual Notice

¶ 87        The Association separately suggests that case law from this court demonstrates that it would be "useless" for Kirk to notify Harleysville of the 2011 action in light of its denial coverage for the 2009 action, such that we should overlook the lack of notice. Specifically, the Association relies heavily on *Davis v. United Fire & Casualty Co.*, 81 Ill. App. 3d 220 (1980), and *Pope v. Economy Fire & Casualty Co.*, 335 Ill. App. 3d 41 (2002). However, these cases are unavailing, in light of our supreme court's requirement that an insurer must receive "actual notice" of a lawsuit before the duty to defend can be triggered. *Cincinnati Cos.*, 183 Ill. 2d at 329.

¶ 88        In *Davis*, the insured (Davis) had a policy imposing "the duty to notify the insurer [(United)] of any occurrence within a reasonable time" and to forward documents concerning

a suit. *Davis*, 81 Ill. 2d at 222. After Davis reported to United an accident with a third party (Hankins), United responded by denying coverage. *Id.* at 223. Davis was subsequently sued by Hankins, leading to a default judgment against Davis. *Id.* United refused to satisfy the judgment on the ground that Davis did not provide notice of the suit. *Id.* at 224. The Third District of our court reasoned that, given its prior denial upon receiving notice of the accident, United could not avoid coverage based on Davis's failure to give notice of the lawsuit. *Id.* at 225 ("Given the company's conduct, an insured is justified in concluding that further communication and notice would be useless and the company will not be allowed to assert, as a defense, any failure by the insured to give such further notice."). Thus, United was "equitably estopped from asserting" the insured's failure to notify it of the suit. *Id.* at 226.

¶ 89        *Davis* is clearly distinguishable from the instant situation, as it applied equitable estoppel to excuse noncompliance with a policy provision regarding notice of a suit. However, our supreme court indicated that, apart from any particular policy defenses, "actual notice" of a lawsuit is a prerequisite to the duty to defend. *Cincinnati Cos.*, 183 Ill. 2d at 329. Here, Harleysville did not receive actual notice of the 2011 action.

¶ 90        We also find inapposite the Association's reliance on *Pope*, 335 Ill. App. 3d 41. In that case, the insured (Basta) forwarded to its insurer (Economy) a presuit letter describing a claim by Basta's tenant (Pope) for injuries from lead exposure. *Id.* at 44. Economy responded that it would not provide a defense due to a policy exclusion for lead. *Id.* Basta did not notify Economy of Pope's subsequent lawsuit against Basta, which was eventually settled under an agreement whereby Pope was assigned Basta's claims. *Id.* at 45. Pope filed a declaratory judgment action, alleging that Economy breached its duty to defend. *Id.* On appeal from the

entry of summary judgment for Economy, this court found that Economy repudiated the contract by stating prematurely that it would not defend Basta, its insured. *Id.* at 47. Nonetheless, "while Basta may have been relieved of her obligation to \*\*\* provide notice of the underlying lawsuit," our court reasoned that the allegations of the underlying complaint did not give rise to a potential for coverage. *Id.* at 48-49. In turn, estoppel did not apply. *Id.* at 51-52.

¶ 91    The Association suggests that, since the insured in *Pope* was relieved of any obligation to provide notice of the underlying lawsuit after Economy stated it would not defend, we should find there was no obligation to notify Harleysville of the 2011 action after it declined to defend the 2009 action. *Pope* is distinguishable from the instant situation, as it involved a single lawsuit, not multiple actions. *Pope* simply does not suggest that a failure to defend one lawsuit excuses a party from giving notice of a second lawsuit. More fundamentally, *Pope* does not detract from our supreme court's holding that an insurer must have "actual notice" before its duty to defend is triggered. See *Cincinnati Cos.*, 183 Ill. 2d at 329. As discussed, the requirement of actual notice is independent of any contractual notice obligation. In other words, even if Kirk was excused of any contractual duty to notify Harleysville of the 2011 action, Harleysville's lack of actual notice of that lawsuit is dispositive.[5]

¶ 92    We similarly reject the Association's speculative assertions that Harleysville "would have" received notice of the 2011 action, had it responded differently to the 2009 action. " '[M]ere speculation, conjecture, or guess is insufficient to withstand summary judgment.' " *In re Estate*

---

[5]For the same reason, we are also not persuaded by the Association's argument that Kirk was "excused from notifying Harleysville of the 2011 Action because Kirk was out of business" when that action was filed.

*of Crawford*, 2019 IL App (1st) 182703, ¶ 39 (quoting *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999)). The undisputed fact remains that Harleysville did not receive the requisite "actual notice" of the 2011 action. *Cincinnati Cos.*, 183 Ill. 2d at 329-30. In turn, no duty to defend was triggered. *Id.* at 329.[6]

¶ 93        Before concluding, we recognize that our determination may lead to a seemingly unfair result from the perspective of the Association members who allegedly purchased condominium units with construction defects. That is, despite the default judgment the Association obtained against Kirk in the 2011 action, it may not be able to realize the benefit of that judgment, given Kirk's bankruptcy and the lack of notice of the 2011 action to Kirk's insurer, Harleysville. We find it puzzling why the Association (more precisely, the Association's counsel) did not take the time to notify Harleysville of its 2011 action, especially as the Association was undoubtedly aware of Kirk's bankruptcy. Indeed, the Association's amended complaint in the 2011 action referenced its agreement with Kirk's bankruptcy trustee for the assignment of Kirk's claims to the Association. Had the Association ensured that Harleysville received actual notice of the 2011 action, Harleysville potentially could have had a duty to defend Kirk in that action. However, our supreme court precedent indicates that an insurer must have actual notice of the complaint in the immediately underlying action before a duty to defend may arise. *Id.* at 329-30. Here, there is no factual dispute that Harleysville was not notified of the 2011 action. The lack of this prerequisite to coverage is decisive in this appeal, regardless of the harshness of the outcome for the condominium owners in the Association.

---

[6]As Harleysville's lack of actual notice precluded its duty to defend Kirk in the 2011 action, we need not separately analyze whether the allegations of the 2011 complaint brought the case potentially within coverage under the policies.

¶ 94        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 95        Affirmed.

*Board of Managers of Roseglen Condominium Ass'n v.*
*Harleysville Lake States Insurance Co.*, 2022 IL App (1st) 210265

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2015-CH-626; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey S. Youngerman, Stephen D. Sharp, and Christopher L. Gallinari, of Flaherty & Youngerman, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Neal R. Novak and Karen Anderson Moran, of Novak Law Offices, of Chicago, for appellee. |